COMMONWEALTH vs. WILLIE JAMES BELLAMY.

Suffolk. October 5, 1983. — March 20, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal, Instructions to jury. Felony-Murder Rule.*

At a murder trial a judge's instructions to the jury with respect to the defendant's voluntary use of drugs and its bearing on his criminal responsibility presented no such risk of a miscarriage of justice as would warrant relief under G. L. c. 278, § 33E. [514]

At a murder trial, the judge did not err in refusing to instruct the jury with respect to manslaughter, since no view of the evidence would warrant a verdict of guilty of manslaughter. [514-515]

A judge's failure to instruct a jury, in the terms now required by *Commonwealth* v. *Watson,* 388 Mass. 536 (1983), that a weaponless defendant could be found guilty of first degree felony-murder based on armed robbery only if he knew that his accomplice had a weapon, presented an appropriate occasion, in the circumstances of a case tried a number of years before the *Watson* decision, for this court to exercise its powers under G. L. c. 278, § 33E, and direct the entry of a verdict of guilty of murder in the second degree. [515-516]

INDICTMENT found and returned in the Superior Court on April 18, 1975.

The case was tried before *Roy,* J.

*Henry P. Sorett* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Willie James Bellamy, appeals from a judgment of conviction of murder in the first degree entered October 17, 1975. A motion for late entry of appeal was allowed on December 3, 1980, by a single justice of this court.[1] Bellamy asserts that the following errors require reversal

[1] Much of the delay in Bellamy's appeal was caused by failure of trial counsel to pursue the appeal and by a dispute concerning whether trial counsel ought to have been a witness on Bellamy's behalf.

of his conviction and a new trial or that his conviction be reduced to murder in the second degree or to manslaughter: (1) failure of the trial judge to instruct the jury adequately concerning Bellamy's use of heroin as it affected his ability to form an intent to commit the crime charged; (2) his failure to instruct the jury concerning manslaughter; (3) his failure to instruct the jury concerning the mental state required for felony-murder. An exception was noted at trial only as to the manslaughter issue. We will review the remaining issues to determine whether there exists a substantial risk of a miscarriage of justice pursuant to our powers under G. L. c. 278, § 33E. For the reasons set forth below, we find that this case presents an appropriate occasion for the exercise of our § 33E powers and order the entry of a verdict of murder in the second degree.

The events leading to Bellamy's indictment for murder and armed robbery[2] may be summarized as follows. On January 26, 1975, police found Lino Vasquez, proprietor of The Variety Store at 12 South Huntington Avenue, Boston, dead of a stab wound inflicted by a knife customarily kept near the store's cash register for use in the store's operation. At the scene, police retrieved a leather cap,[3] a crowbar, and the knife, then broken.

The Commonwealth's case relied heavily on the testimony of Avis McCarty, the mother of Bellamy's daughter. McCarty testified that on the day Vasquez was murdered, Bellamy complained of heroin withdrawal symptoms and set out in search of drugs wearing, among other items, a brown leather jacket and cap. Bellamy returned to McCarty's apartment the night following the murder, wearing different clothing, and told McCarty that he had "killed a man for nothing." McCarty said Bellamy told her that he and two friends had attempted to rob a store, but that as they were leaving, the clerk tried to hit Bellamy with a crowbar. Bellamy told McCarty he then picked up a knife from the store counter and stabbed the clerk

---

[2] The Commonwealth has taken no action on the indictment for armed robbery.

[3] Expert evidence introduced at trial found hair from the cap to be comparable to samples of hair from the defendant's head.

four or five times. Bellamy, according to McCarty, reported that he had lost his leather cap at the scene, and that friends had lent him clothing to avoid police suspicion concerning the lost hat and his leather jacket. Bellamy told McCarty that the robbery netted a few dollars and some cartons of cigarettes. He sold the cigarettes to buy food and drugs.

Bellamy's testimony focused on exonerating himself and intimating that McCarty had fabricated her testimony out of bitterness due to his refusal to divorce his wife and marry McCarty. Bellamy acknowledged his drug addiction and admitted to purchasing and injecting heroin shortly before the incident at the store. According to Bellamy's testimony, a friend, named "Bimbo," and he went to the store to make a telephone call and to buy cigarettes. Bimbo wore the brown leather jacket and cap Bellamy had recently traded with him for heroin. As Bellamy began to use the telephone, he saw Bimbo enter the store and become involved in an argument with the victim. The cash drawer was open, and Bellamy saw Bimbo reach toward it. The victim then picked up a crowbar and swung at Bimbo. Bellamy, who was by the telephone near the door, came close to being hit. Bellamy left the store and returned to his friend's nearby car. Bimbo came running out shortly thereafter and said, "[L]et's get out of here." Bellamy observed a cut on Bimbo's right hand. Bellamy denied being armed upon entering the store, denied picking up any weapons while in the store, denied robbing the store or making any threats, and denied telling McCarty that he killed a man for nothing.

The judge instructed the jury concerning the felony-murder rule. He gave instructions on no other theory of murder in the first degree. He stated that the doctrine of felony-murder was applicable to both armed and unarmed robbery, as both were punishable by life imprisonment. He told the jury that murder in the first degree under the doctrine of felony-murder could be found if Bellamy killed the victim during the robbery or during escape, that a lack of intent to kill during the robbery was no defense, and that the jury might convict on a common enterprise theory unless Bellamy dissociated himself from the

robbery prior to the killing. He said that voluntary drug intoxication was no legal excuse unless it deprived Bellamy of the ability to decide to commit the crime, but it would not furnish an excuse simply because the purpose of the robbery was to obtain money for drugs. No charge concerning manslaughter was given.

1. *Error concerning instructions regarding intoxication.* Bellamy argues for the first time before this court that it was error to fail to instruct the jury that a verdict of no greater than murder in the second degree could be returned if the jury found Bellamy incapable of entertaining the malicious intent necessary for a verdict of murder in the first degree because of drug intoxication.

The defendant submitted twenty-seven requests for jury instructions. Not a single one addressed the question of the defendant's drug intoxication. See *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). However, the judge instructed the jury fully on the law as it relates to the voluntary use of drugs and its bearing on criminal responsibility. He also instructed the jury on the elements of murder in the second degree. Read as a whole, his charge contains no error which would demand relief under our powers in G. L. c. 278, § 33E. See *Commonwealth* v. *Coleman,* 389 Mass. 667, 673 (1983).

2. *Failure to instruct the jury concerning manslaughter.* Bellamy objected to the judge's refusal to instruct the jury on manslaughter. Such an instruction must be given if, on any view of the evidence, regardless of the credibility of the hypothesis, a finding of manslaughter might be made. *Commonwealth* v. *Schnopps,* 383 Mass. 178, 181-182 (1981). However, the correlative rule of law is that where there exists no evidence of manslaughter, failure to instruct on that theory is not erroneous. *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746-747 (1975).

Nothing in the evidence presented suggests that the victim was murdered as a result of sudden transport of passion upon reasonable provocation without malice, or upon sudden combat. *Commonwealth* v. *Jones,* 382 Mass. 387, 390 n.3 (1981). The jury cannot, in the absence of some evidence of combat

upon sudden provocation, be permitted to speculate as to such conditions. *Commonwealth* v. *Wilborne,* 382 Mass. 241, 246 (1981).

Nor does this case suggest that force in excess of that which the privilege of self-defense permits was used so as to justify an instruction on manslaughter. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980). Self-defense is not generally available to one who initiates the affray. *Commonwealth* v. *Johnson,* 379 Mass. 177, 180-181 (1979). Here, the defendant's testimony, if believed, indicates that there was available a reasonable means of escape without resort to deadly force. See *Commonwealth* v. *Walden,* 380 Mass. 724, 729 (1980); *Commonwealth* v. *Harrington, supra*; *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 (1966). Additionally, as in *Commonwealth* v. *Walden, supra* at 730, there is no factual basis upon which the jury might find that the stabbing was unintentional.

3. *State of mind required for felony-murder.* Bellamy asserts error in the judge's failure to instruct the jury that before finding him guilty of murder in the first degree under the felony-murder rule, they must find that he acted with conscious disregard of human life. In short, Bellamy alleges error in the' judge's failure to anticipate the refinements in the felony-murder rule announced in *Commonwealth* v. *Watson,* 388 Mass. 536 (1983), *Commonwealth* v. *Moran,* 387 Mass. 644 (1982), and *Commonwealth* v. *Matchett,* 386 Mass. 492 (1982), decided years after his trial, and he seeks to benefit from retroactive application of those principles. The issue in this case comes closest to *Watson.*

Retroactive application of a rule of criminal law is indicated if (1) a case is on direct appeal or as to which time for direct appeal has not expired when the new rule is announced and (2) the issue was preserved at trial. G. L. c. 278, § 33E. See *Commonwealth* v. *Parham,* 390 Mass. 833, 846 (1984).

On the hypothesis that Bimbo stabbed the victim while the defendant was present, the charge did not make it clear that the jury had to find that the defendant knew that Bimbo was wielding a knife. The issue was not preserved at trial in the exact formulation of *Watson,* but the defendant objected to

that portion of the charge which fell short of the teaching of *Watson* on the criminal responsibility of parties to a joint criminal undertaking. The jury may have been misled in concluding that the defendant was guilty of murder in the first degree in the light of the charge.

However, there was an abundance of evidence for a finding of murder in the second degree. For this reason, exercising our power under G. L. c. 278, § 33E, to prevent a miscarriage of justice, we direct the entry of a verdict of guilty of murder in the second degree, and the imposition of sentence thereon. See *Commonwealth* v. *Rego,* 360 Mass. 385, 394 (1971); *Commonwealth* v. *White,* 353 Mass. 409, 426 (1967), cert. denied, 391 U.S. 968 (1968).

*So ordered.*