COMMONWEALTH vs. GORDON BROWN.

Middlesex.    March 5, 1984. — August 7, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Homicide. Felony-Murder Rule. Joint Enterprise. Practice, Criminal,* Cap-
ital case, Instructions to jury, Voluntariness of statement, Argument by
prosecutor. *Evidence,* Admissions and confessions. *Constitutional Law,*
Admissions and confessions, Waiver of constitutional rights. *Waiver.*

At a criminal trial, where the judge, in stating her findings as to the volun-
tariness of the defendant's inculpatory statement, made explicit reference
to this court's decision in *Commonwealth* v. *Tavares,* 385 Mass. 140,
152, cert. denied 457 U.S. 1137 (1982), her omission of the words
"beyond a reasonable doubt" was not error. [636-637]
At a criminal trial, the judge's instruction to the jury as to the issue of volun-
tariness of the defendant's inculpatory statement complied with the Mas-
sachusetts "humane practice." [637-638]
Evidence at a murder trial was sufficient to warrant the jury in finding beyond
a reasonable doubt that the shooting of the victim by the defendant's
coventurer was a natural and probable consequence of a robbery in which
the defendant participated. [638-640]
At a murder trial, the prosecutor's remarks during closing argument were not
prejudicial, and were adequately treated in the judge's charge. [640-642]
At a murder trial, the judge's charge adequately apprised the jury that in
order to convict the defendant they had to find that he knew his coventurer
was carrying a gun. [642-643]
The judge at a murder trial was not required to instruct the jury that they must
find the existence of a joint venture beyond a reasonable doubt prior to
consideration of the hearsay statements of a coventurer. [643]
General Laws c. 265, § 1, which provides that "[t]he degree of murder shall
be found by the jury," requires that the judge at a murder trial shall
instruct the jury on murder in the second degree even if the evidence
would support verdicts only of guilty of murder in the first degree or
of not guilty. [643-645]

INDICTMENT found and returned in the Superior Court on
December 14, 1976.

The case was tried before *Dolan, J.*

*Patricia A. Kennelly* (*Robert L. Sheketoff* with her) for the defendant.

*Ellen M. Bane,* Assistant District Attorney, for the Commonwealth.

*Willie J. Davis,* amicus curiae, submitted a brief.

NOLAN, J. Edward Paulson was killed on September 9, 1976, in an apartment in Cambridge. The defendant was found guilty of murder in the first degree by a jury on December 17, 1982. We have reviewed the entire record and find no reversible error which requires a new trial. However, in the interest of justice, we exercise our power under G. L. c. 278, § 33E, and we direct the entry of a verdict of murder in the second degree for reasons which we set out later in this opinion.

In 1976, Edward Paulson, the victim, was twenty-eight years old and a college student. His brother, Richard Paulson, was then twenty years old. In early 1976, the victim learned that the defendant sold hashish, and communicated with him. The victim and Richard met the defendant outside Symphony Hall in Boston and bought one pound of hashish for $900. Sometime later, a second transaction took place in the defendant's apartment in Cambridge; again, the victim made the arrangements and was accompanied by Richard. They purchased one pound of marihuana from the defendant. The relationship among the three was friendly.

For the next meeting, the defendant initiated the telephone call to the victim on September 8, 1976, and told the victim that he had a "good deal" for him, one kilogram (2.2 pounds) of hashish for $1,600. This sounded like an attractive offer to the victim because hashish generally was being sold for $900 a pound. The victim suggested making the purchase on September 10, but the defendant protested that the deal had to be consummated "right away," the next day at his apartment in Cambridge. The victim acquiesced. Richard collected $1,600 in cash from several friends who would share the hashish with him. It was 9:15 P.M. on September 9, 1976, when the victim and Richard arrived at the defendant's apartment. Richard carried a box which contained $1,600 and a scale. The defendant

responded to the door bell and directed the brothers to his living room. Unlike the earlier friendly demeanor which he had exhibited, the defendant seemed "[v]ery nervous, very shaky, just not at ease at all." He was "like a totally different person." The defendant said that the hashish supplier had not arrived. He invited the brothers to wait in his living room while he went to the store to buy some beer. The brothers declined this invitation because they were uncomfortable and felt that "something was not right." They left and, on their way downstairs, passed a man and a woman coming upstairs (later identified as Anthony Martin and Meredith Weiss). When the brothers reached the street, Richard looked up to the defendant's living room window and saw the defendant talking with Martin and Weiss. Richard went back up to the defendant's apartment and asked the defendant whether Martin was the drug supplier. The defendant said no.

After returning to their car, the victim and Richard drove around for approximately fifteen minutes and then returned to the defendant's apartment. Again, Richard carried the box containing the scale and the money. On arriving at the apartment door, the defendant ordered them into a bedroom. Richard sat on the bed and the victim stood nearby. The defendant "was still very, very nervous." He turned on some music and announced that he had to go to see his landlord. It appeared that the defendant quickly left the apartment through a kitchen door. The brothers felt "uncomfortable" and decided to leave but, within seconds of the defendant's departure, Martin entered the bedroom from an adjacent room.

Martin pointed a .38 caliber gun at the brothers and said, "Down on the floor. Where's the money?" The victim raised his hands and said, "Wait a minute." Martin shot him in the chest from a distance of no more than five feet. Martin then turned to Richard and demanded, "Where's the money?" Though it was in the box on the bed next to him, Richard told Martin that it was in the car. Martin left through the same door that the defendant had used. Within hours of the shooting, the victim died from the gun shot wound.

Weiss was Martin's girl friend and lived with him in Somerville. Despite Martin's insistence that Weiss allow him to use her mother's car alone that night, she drove the car. During the ride to Cambridge, Martin told her that he and the defendant were going to meet two men to whom they were selling drugs. He told her that he had a gun "to make things go more smoothly." While she, Martin, and the defendant were in the defendant's living room, Martin asked her to wait in the car. She did so, and, while waiting, she heard a sound like a shot. Within minutes, the defendant got into the back seat; Martin entered the front seat next to her. The defendant and Martin were upset during the ride to a friend's home in a nearby city, where they stayed for two days. Weiss then drove them to a bus terminal in New York City. On the way the gun was thrown into the Mystic River. On Weiss's return to Boston, she was indicted as an accessory after the fact to the murder. She testified under a promise not to prosecute.

Martin and the defendant went to Los Angeles and stayed briefly with Martin's cousin. The defendant then lived abroad until 1982, when he returned to his hometown, Englewood, New Jersey. He was arrested in Englewood on May 13, 1982, and was brought back to Massachusetts for trial.

In an interrogation after his arrest in Englewood, the defendant admitted that he had arranged a drug deal with the brothers and that he and Martin were going "to rip the guys off." He said that when the brothers arrived at his apartment, Weiss left the apartment while Martin remained. After the defendant heard a shot, Martin came to him and told him that he had shot the victim.

The issues argued by the defendant may be divided as follows:[1] (1) the trial judge's findings concerning the voluntariness of defendant's statement to the arresting police; (2) the judge's failure to instruct the jury on three specific issues; (3) the

---

[1] Trial counsel, who is not appellate counsel, filed a motion for leave to file an amicus brief with this court. Mass. R. A. P. 17, 365 Mass. 864 (1974). The motion is allowed and we treat the arguments raised in the amicus brief as being incorporated in the defendant's argument.

denial of the motion for directed verdict; (4) the prosecutor's closing argument; and (5) review under G. L. c. 278, § 33E.

1. *Findings and Instructions Concerning the Voluntariness of the Defendant's Statement.*

The defendant challenges, for the first time on appeal, the judge's failure to find that the defendant's statement to the Englewood police was voluntary "beyond a reasonable doubt."[2] Similarly, the defendant asserts error in the judge's failure to charge the jury that they also must find the defendant's statement was voluntary "beyond a reasonable doubt" before considering the substance of that statement. Because the defendant failed to object at trial to either matter, we shall review them solely to determine whether there was error and if so whether there exists a substantial risk of a miscarriage of justice. *Commonwealth* v. *Brady,* 380 Mass. 44, 54 (1980).[3]

In support of his argument that the requisite standard of proof was not applied, the defendant cites our decision in *Commonwealth* v. *Tavares,* 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). The defendant's statement of the substantive law is correct: prior to placing any confession or admission before a jury, a trial judge is compelled to make inquiry concerning its voluntariness at a voir dire before the jury are allowed to consider it, if voluntariness is a live issue at trial. *Id.* at 151. The Commonwealth must demonstrate beyond

---

[2] Despite a short argument in the defendant's brief on his Miranda rights, as distinguished from the issue of the voluntariness of his statement, we do not consider the Miranda issue because it was not raised at trial, nor was a pretrial motion to suppress filed. See Mass. R. Crim. P. 13 (d) (2), 378 Mass. 871 (1979).

[3] In his requested instructions, the defendant refers to his statement to police in the following manner: "Evidence relating to any statement or act claimed to have been made or done by a defendant outside of Court, and after a crime has been committed, should always be considered with caution and weighed with great care; and all such evidence should be disregarded entirely, unless the evidence in the case convinces you beyond a reasonable doubt that the statement or act was knowingly made or done." The defendant did not object to the instructions as given. The defendant may not now make use of appellate review to press issues which could have been, but were not, raised at trial by seasonable objection. *Commonwealth* v. *Ely,* 388 Mass. 69, 72-73 (1983).

reasonable doubt that the statement it seeks to introduce was voluntarily made. *Commonwealth* v. *Tavares, supra* at 152.

We are mindful that conclusions as to voluntariness "must appear from the record with unmistakable clarity." *Commonwealth* v. *Tavares, supra* at 152, quoting *Sims* v. *Georgia*, 385 U.S. 538, 544 (1967). However, we are inclined to agree with the Commonwealth's argument that in this case the defendant seeks "to elevate form over substance." The omission of the specific words "beyond a reasonable doubt" from the judge's findings is not a conclusive indication that the standard of proof was not met. Although we urge judges to incorporate this standard expressly within the findings, we cannot say that the omission here was error. The judge's findings concerning voluntariness were made with explicit reference to *Commonwealth* v. *Tavares, supra*. Hence the standard of that decision is implicitly incorporated within them. Where failure to make findings alone would not constitute reversible error, the absence of precise language concerning the standard of proof does not require reversal, particularly where there is every indication that the correct standard was applied. See *Commonwealth* v. *Brady*, 380 Mass. 44, 52 (1980).

Further, the testimony at the voir dire hearing overwhelmingly indicated voluntariness; the defendant acknowledged having been advised of his Miranda rights, and admitted speaking freely with the Englewood police. Although the defendant's testimony differed from that of the police officers regarding the time at which he signed the Miranda waiver form, and although he denied making certain statements to which the police testified, and although he stated that he felt he was "obligated" to sign the form, this without more is insufficient to require a finding of involuntariness. The judge's conclusion concerning voluntariness is further supported by evidence that the defendant knew one of the officers with whom he spoke and that the defendant was well aware of the existence of the warrant.

The defendant presents the same argument as to the jury instructions given regarding voluntariness. This argument also lacks merit. Jury determinations of voluntariness are not com-

pelled by the United States Constitution, but are part of the long-standing "humane practice" in Massachusetts. *Commonwealth* v. *Tavares, supra* at 150 n.15. In this case, however, the judge gave a cautious and detailed instruction that the "issue of the voluntariness of [the defendant's] statements is a question of fact to be decided by you, the jury." She warned the jury that they should not consider the substance of the statements if they determined that the statements were made involuntarily. Although the judge did not repeat the standard of proof in this portion of her charge, we have previously held that the Commonwealth's burden need not be reiterated with each issue discussed throughout the charge. See *Commonwealth* v. *Benoit,* 389 Mass. 411, 421-422 (1983), and cases cited. We conclude that there was no error.

2. *Motion for a Required Finding of Not Guilty.*

At the close of the Commonwealth's case, defense counsel moved for a required finding of not guilty as to murder in the first degree, asserting (1) that the Commonwealth failed to introduce sufficient evidence that the defendant intentionally participated or assisted in the commission of a robbery, and (2) that the Commonwealth failed to produce sufficient evidence that the defendant had the particular intent necessary to convict him of armed robbery. The judge denied this motion, and the defendant now claims error. For the first time on appeal, he further argues that the Commonwealth failed to prove that the killing was a natural and probable consequence of the defendant's felonious act. With respect to the latter argument, we need only review the evidence to ensure that there was no error; or if error, that no miscarriage of justice has resulted. We conclude that the judge correctly denied the motion and that the Commonwealth produced sufficient evidence to show that the killing was a natural and probable consequence of the defendant's felonious act.

First, the evidence sufficiently supports a conclusion that the defendant intentionally encouraged or assisted in the commission of the robbery. The evidence indicates that the defendant initiated the drug transaction and negotiated the place, terms, and the time of the drug transaction with Edward Paul-

son. When the brothers returned to the apartment for the third time, the defendant ushered them into a bedroom. The jury could have inferred that this action was intended to facilitate Martin's surprise entrance from the adjacent room. Although the defendant apparently left the apartment before the attempted armed robbery occurred, ostensibly to see his landlord, the jury could have inferred that he may have remained just outside the door to act as lookout or to render assistance, from the evidence that the defendant did not call or visit his landlord on the night of the shooting and that the defendant entered the car just seconds before Martin. Such an inference is reasonable and possible. See *Commonwealth* v. *Soares,* 377 Mass. 461, 471-472, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968), cert. denied sub nom. *Bernier* v. *Massachusetts,* 393 U.S. 1058 (1969).

Second, the Commonwealth produced sufficient evidence to indicate that the defendant shared the mental intent to commit armed robbery. The defendant admitted at the time of his arrest that he and Tony Martin intended to "rip off" the Paulson brothers. The term "rip off" may be ambiguous but could be interpreted to mean armed robbery. "It is not essential that the inferences drawn from facts or circumstances be necessary inferences." *Commonwealth* v. *Medeiros, supra* at 197. The record reveals sufficient evidence of both participation in and knowledge of the circumstances from which a jury could infer the requisite mental state, as well as the defendant's presence at the scene. See *Commonwealth* v. *Burrell,* 389 Mass. 804, 807 (1983).

Finally, for the first time on appeal, the defendant suggests that the evidence does not warrant an inference that the victim was killed while resisting the attempted robbery and therefore the murder was not a natural and probable consequence of the robbery. See *Commonwealth* v. *Ambers,* 370 Mass. 835, 839 (1976). We believe a reasonable inference drawn from the evidence to be that Martin shot the victim because he was resisting. Richard Paulson testified that after Martin entered the bedroom, he said, "Down on the floor. Where's the money?" while brandishing the handgun. The victim then raised his

hands and said, "Wait a minute." In the excitement of the moment, Martin may have interpreted the gestures and statement as a sign of resistance, and fired. For these reasons, we believe the Commonwealth satisfied its burden of proof.

3. *Prejudicial Remarks During the Prosecutor's Closing Argument.*

The defendant claims that the prosecutor impermissibly commented during closing argument on the defendant's failure to take the stand.[4] He argues that this prejudicial remark requires that we reverse the conviction and order a new trial. Defense counsel did not object to this remark; therefore, we review the Commonwealth's closing argument in its entirety to determine whether a miscarriage of justice has occurred. The remark must also be considered in light of the judge's instructions to the jury and the evidence presented at trial. *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 416 (1978). With these principles in mind, we have reviewed the remarks and find no impropriety.

Taken in context, the prosecutor's remarks cannot reasonably be labelled an adverse comment on the defendant's failure to testify. Cf. *Commonwealth* v. *Domanski,* 332 Mass. 66, 69 (1954). During the defense counsel's cross examination of Weiss, he inquired whether only she, Martin, and the defendant

---

[4] The pertinent portion of the closing argument is as follows: "Now, unfortunately, real life is not like t.v. I'm sure you've all seen now that jury duty and real trials aren't like what you see on Perry Mason and Justice for All and things like that. You see that at the last moment in real life, some previously undiscovered witness who happened to have seen the whole thing through a window across the street doesn't rush into the courtroom to turn in a piece of evidence that solves the entire puzzle. In real life it's tougher than that. We do have Meredith Weiss in this case who sheds a certain amount of light on the nature of the agreement between Gordon Brown and Tony Martin. Some light, ladies and gentlemen, I suggest to you, would not be available from any other source other than Meredith Weiss *or from either of the two participants.* But no source available to the Commonwealth other than Meredith Weiss.

"Now, unfortunately, she can't give us as much help as she might . . . but nonetheless, I suggest to you that Miss Weiss' testimony was most helpful to you." (Emphasis supplied.)

really knew the "truth."[5] The implication from this line of examination was that the jury were not receiving the entire story. Again in closing argument defense counsel implied that Weiss's testimony was not the whole story. We view the prosecutor's remarks, in light of defense tactics, as an attempt to bolster Weiss's testimony. The prosecutor stressed that Weiss's testimony did shed some light on the events of that night and she explained the difficult task of proving the events. For these reasons we do not believe that the fleeting remark was "reasonably susceptible of being interpreted as a comment on [the defendant's] failure to take the stand." Id. See Commonwealth v. Ferreira, 381 Mass. 306, 315 n.13 (1980); Commonwealth v. Storey, 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980).

Furthermore, the judge's instructions sufficiently cured any possible prejudice to the defendant. The judge correctly instructed on the presumption of innocence, and the nature of the opening and closing statements. She further instructed that the defendant had no duty to establish his innocence. Although defense counsel requested an instruction that the jury may not draw any adverse inferences from his failure to testify, the judge did not give this instruction. For all that appears in the record, the omission may have been inadvertent. Defense counsel, however, did not object to the omission. Therefore, we are not required to consider this issue except to satisfy ourselves that there has been no miscarriage of justice. We are so satisfied.

The defendant also argues that the prosecutor unfairly injected passion and sympathy into her closing argument.[6] The

---

[5] DEFENSE COUNSEL: "And is it fair to say that that is the only reason why you are here testifying, that is, because you had been promised by the District Attorney that you will not be prosecuted?"
THE WITNESS: "That's right."
DEFENSE COUNSEL: "And, of course, you said that you would come in and tell the truth; is that right?"
THE WITNESS: "That's right."
DEFENSE COUNSEL: "And, of course, what the truth is, only you, Tony Martin, and [the defendant] know; is that right?"
THE WITNESS: "That's right."

[6] The pertinent portion of closing argument is as follows: "Now, those theories [felony-murder, joint enterprise] are the reason why the Common-

defendant objected to these statements at trial. The judge did not strike the statements, but assured defense counsel she would instruct accordingly in her final charge.

We conclude that the prosecutor's remarks were intended to explain the basis for felony-murder in rebuttal to defense counsel's suggestion that the felony-murder rule was harsh as applied to the defendant. The judge correctly determined that these statements were not prejudicial. Contrast *Commonwealth* v. *Smith,* 387 Mass. 900, 909-910 (1983). Moreover, the judge's charge, which stated that the jury could not base their decision on sympathy, sufficiently negated any possible prejudice.

4. *Instructions on Knowledge of the Weapon, Joint Venture, and Murder in the Second Degree.*

a. The defendant contends that the judge erred in failing to charge that the jury must find that the defendant knew that Martin had a gun before returning a verdict of murder. See *Commonwealth* v. *Watson,* 388 Mass. 536, 544 (1983). Defense counsel did not preserve the issue at trial through a requested instruction or valid objection. Therefore, we need only review the judge's instructions to ensure that there was no error, or if error, that no miscarriage of justice resulted. See *Commonwealth* v. *Bellamy,* 391 Mass. 511, 515 (1984); *Commonwealth* v. *Parham,* 390 Mass. 833, 846 (1984).

The judge instructed the jury that the Commonwealth had to prove beyond a reasonable doubt that the defendant shared with Martin the requisite mental state to rob the victim, that the defendant intentionally assisted Martin in the commission of the armed robbery, and that the defendant "had a willingness

---

wealth argues to you that Gordon Brown is guilty of murder, even though he didn't pull the trigger. . . . And I suggest to you that the facts of this case offer a perfect explanation and justification for why that law exists in this Commonwealth, why that is the law. And that, ladies and gentlemen, is because if it weren't for Gordon Brown, Edward Paulson would be alive today, not dead at 28 with no life ahead of him, no matter what the quality of that life. If it weren't for Gordon Brown, Edward Paulson would be alive.

" . . .

"Gordon Brown entered into this deal with Tony Martin knowing it was a high risk operation. He bargained for this, ladies and gentlemen. He knew somebody could get shot and killed, and he knew it when he went into it, and he sits here today to receive his end of the bargain."

to see that [Tony Martin] was armed with a dangerous weapon." We conclude that these instructions sufficiently apprised the jury that in order to convict the defendant they had to find that he knew that Martin carried a gun. There was no error.

b. The defendant claims error in the judge's failure to instruct the jury that they must find the existence of a joint venture beyond a reasonable doubt prior to consideration of the hearsay statements of a coventurer. At issue is Martin's statement to Weiss to the effect that he was taking a gun to the defendant's apartment in order to make a drug deal "go more smoothly." As no request for instructions or objection to instructions as given was made concerning this issue, appellate review is limited to the question whether there is error, and if error, whether there exists a substantial risk of a miscarriage of justice. *Commonwealth* v. *Parham, supra* at 841.

The defendant's argument in effect requests this court to apply the reasoning of *Commonwealth* v. *Tavares,* 385 Mass. 140 (1982), as to the burden of proof on preliminary determinations concerning joint venture. We decline to do so. The judge carefully instructed the jury as to both the Commonwealth's burden and as to the preliminary evidentiary determinations that they were required to make. More than that was not required.

c. The defendant argues that it was error for the judge to refuse to instruct the jury on murder in the second degree. He asserts that in capital cases the last sentence of G. L. c. 265, § 1, which states that "[t]he degree of murder shall be found by the jury," requires a judge to instruct on murder in the first degree and murder in the second degree even if "it could be argued that the evidence would support only one of two verdicts: either not guilty or guilty of murder in the first degree." *Commonwealth* v. *Dickerson,* 372 Mass. 783, 795 (1977). Alternatively, the defendant argues that the judge should have instructed on the lesser-included offense of murder in the second degree because the evidence provided a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser-included offense. Based on these arguments, the defendant requests a new trial. We agree with the defend-

ant's first argument and need not discuss the second. However, in the interest of justice, we conclude that a new trial is not necessary and, pursuant to our power under G. L. c. 278, § 33E, we direct the entry of a verdict of guilty of murder in the second degree.

At the conclusion of the judge's charge, defense counsel objected to the judge's failure to instruct on murder in the second degree. Defense counsel asserted that G. L. c. 265, § 1, provided the jury with an option to convict the defendant of felony-murder in the second degree even if the evidence only supported a finding that the murder was committed during the commission of the crime of armed robbery, a crime punishable by life imprisonment. The judge denied the request stating: "I do not find in this case how I could possibly have charged the jury with second degree murder under a theory of felony murder." The question presented by the defendant's objection to the omitted instruction is whether G. L. c. 265, § 1, which provides that "[t]he degree of murder shall be found by the jury," requires an instruction on murder in the second degree even if the evidence provides no support for such a verdict. We believe that G. L. c. 265, § 1, does require a charge of this kind.

The Commonwealth argues that G. L. c. 265, § 1, should not be interpreted in this manner because of the long-standing principle that a judge need not instruct on lesser-included offenses if the hypothesis is not supported by the evidence. See *Commonwealth* v. *Santo,* 375 Mass. 299, 305-306 (1978).[7] The Commonwealth further argues that if this court were to

---

[7] The majority of jurisdictions hold that a judge is not required to instruct on murder in the second degree if there is no evidential support. This rule obtains in jurisdictions which have statutes similar and dissimilar to G. L. c. 265, § 1. See *People* v. *Day,* 117 Cal. App. 3d 932, 936 (1981); *Derrickson* v. *State,* 321 A.2d 497, 501-502 (Del. 1974); *State* v. *Zimmer,* 198 Kan. 479, 504 (1967); *Blackwell* v. *State,* 278 Md. 466, 476-478 (1976); *Jackson* v. *State,* 558 S.W.2d 816, 818 (Mo. Ct. App. 1977); *State* v. *Thorp,* 86 N.H. 501, 504 (1934); *State* v. *Covington,* 290 N.C. 313, 346 (1976); *State* v. *Saccoccio,* 50 R.I. 356, 360-361 (1929); *State* v. *Estrada,* 63 Wis. 2d 476, 481-483 (1974). Pennsylvania, however, follows a position similar to ours. See *Commonwealth* v. *McNeal,* 456 Pa. 394, 401 (1974).

adopt the defendant's interpretation of G. L. c. 265, § 1, we would allow the jurors to circumvent their duty to convict the defendant of the gravest crime proved beyond a reasonable doubt. While the Commonwealth's arguments have some merit, we must construe the legislative intent behind G. L. c. 265, § 1, in light of the clear statutory language. *Hoffman v. Howmedica, Inc.*, 373 Mass. 32, 37 (1977).

General Laws c. 265, § 1, clearly provides that "[t]he degree of murder shall be found by the jury." In *Commonwealth* v. *Dickerson*, 372 Mass. 783, 795-796 (1977), we concluded in dictum[8] that this language impressed upon the trial judge the duty to instruct on both degrees of murder. We stated: "The judge, in our view, was correct in submitting verdicts of murder in both the first and second degree for the jury's consideration, even though it could be argued that the evidence would support only one of two verdicts: either not guilty or guilty of murder in the first degree. In instructing as to murder in the second degree, the judge specifically, and correctly, relied on the statutory language in c. 265, § 1, that the degree of murder is for the jury to determine." *Id.* This interpretation, although dictum, comports with the clear statutory language. We therefore hold that G. L. c. 265, § 1, requires a trial judge to instruct on murder in the first and second degrees if there is evidence of murder in the first degree, even though there appears to be no hypothesis in the evidence to support a verdict of murder in the second degree.

The jury verdict established that the defendant was guilty of murder. The Commonwealth has requested as an alternative to a new trial that we reduce the verdict to murder in the second degree. Since we have found sufficient evidence of murder in the first degree (see part 2 of this opinion), in the interest of justice, we direct the entry of a verdict of murder in the second degree pursuant to our power under G. L. c. 278, § 33E. *Com-*

---

[8] This interpretation in *Commonwealth* v. *Dickerson, supra,* is dictum because the court's decision touched that portion of the judge's charge addressing "aggravating or extenuating circumstances" which a jury may consider in deciding whether the evidence proved murder in the first degree or murder in the second degree. *Id.* at 796-798.

*monwealth* v. *Bellamy,* 391 Mass. 511, 516 (1984). *Common-wealth* v. *Rego,* 360 Mass. 385, 396-397 (1971).

5. *Review pursuant to G. L. c. 278, § 33E.*

We have reviewed the entire record and have concluded, for the reasons set forth in this opinion, that the verdict must be reduced to murder in the second degree pursuant to our power under G. L. c. 278, § 33E.[9] The request for a new trial is denied. We remand this case to the Superior Court for entry of a verdict of guilty of murder in the second degree.

*So ordered.*

---

[9] As a result of our reduction of the verdict and concomitant reduction in sentence, we need not address the defendant's argument concerning the constitutionality of imposing a term of mandatory life imprisonment without opportunity for parole on a coventurer other than the actual assailant involved in a felony-murder.