COMMONWEALTH *vs.* FREDERICK N. PIDGE, JR.

Middlesex.   May 4, 1987. — July 1, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Self-Defense. Evidence*, As to self-defense, State of mind.

At a murder trial in which the critical issue was whether the jury believed
  a certain witness's testimony or the defendant's claim of self-defense,
  there was reversible error in the exclusion of the defendant's testimony
  as to his state of mind at the time of the homicide, offered to show that,
  on the night of the killing, the witness had told the defendant of previous
  assaults committed by the victim upon a number of people, including a
  police officer, with an assortment of weapons, and that the defendant
  acted justifiably in reasonable apprehension of bodily harm at the time
  of the homicide. [352-354]
This court's holding in *Commonwealth* v. *Fontes*, 396 Mass. 733 (1986),
  that a defendant asserting self-defense in a homicide case should be
  allowed to introduce evidence that at the time of the killing he knew of
  specific violent acts recently committed by the victim, was applied to
  the circumstances of a case tried before the *Fontes* decision, where the
  defendant had properly preserved the issue of the exclusion of such
  evidence and raised it on direct appeal. [354]

INDICTMENTS found and returned in the Superior Court Department on October 30, 1984.

The cases were tried before *Robert S. Prince*, J.

*Carlo Obligato*, Committee for Public Counsel Services, for the defendant.

*Karen J. Kepler*, Assistant District Attorney, for the Commonwealth.

NOLAN, J.   The defendant, Frederick N. Pidge, Jr., was convicted by a jury of the murder in the first degree of William McCart. He was also convicted of assault and battery by means of a dangerous weapon upon Glenn Marrone and upon Dorothy Blackler Troy. The defendant was sentenced to life imprisonment on the murder conviction and to concurrent terms of six

to ten years and two and one-half years to three years on the assault and battery convictions. He appealed the convictions, and we now reverse and order a new trial.

On Friday evening, October 5, 1984, the defendant met Glenn Marrone and William McCart at a Sudbury restaurant. The defendant and Marrone knew each other through a mutual friend, Dorothy Blackler Troy, but the defendant had never met McCart. At the restaurant, all three men were drinking alcoholic beverages. The three men left and went to another restaurant where they continued drinking. At the second restaurant, the defendant and McCart got into an argument. At approximately 1:30 A.M. on October 6, 1984, the three men left the restaurant and drove to Troy's house. The defendant had been staying at Troy's house, and Marrone frequently visited Troy and often did yard work for her. Marrone and the defendant each testified that he had a key to Troy's house, but Troy denied ever having given the defendant a key. On the way to the house, Marrone drove his automobile; the defendant sat in the passenger's seat, and McCart sat in the back seat. McCart and the defendant again began to argue.

From this point, Marrone's version of the events differs substantially from the defendant's. Marrone was the Commonwealth's chief witness. He testified that he kept a knife, which he used on his family's boat, in the front seat of his automobile. According to Marrone, the defendant grabbed the knife during the ride to Troy's house and waved it. McCart then punched the defendant and gave him a bloody nose. Marrone stopped the vehicle and the defendant got out and said he would walk. Marrone told the defendant to throw away the knife and get back in the vehicle. The defendant got back in the vehicle and said he had thrown the knife away. Marrone got out of the vehicle and looked for the knife but could not find it. He then drove to Troy's house without incident.

When the three arrived at Troy's house, McCart and the defendant went inside but Marrone remained behind to lock the vehicle and get his cigarettes. When Marrone entered the house, he heard McCart yelling for help. He saw both men struggling on their hands and knees with the defendant leaning

over McCart. Marrone saw his knife in the defendant's hand and saw blood on the floor beneath McCart. Marrone jumped on the defendant in an effort to aid McCart, and the defendant turned and stabbed Marrone in the side. Troy and the other residents of the house were awakened and went to the kitchen area. The defendant stood up and whirled around, cutting Troy's hands. The defendant then ran out of the house. McCart died of a six-inch stab wound to the chest. It was stipulated that Marrone's knife or one similar to it caused the wound.

After the defendant left the house, Troy aided Marrone by putting towels on his wound. When she loosened his trousers to get at the wound, the knife sheath fell from Marrone's pants. By this time, the police had arrived, and Marrone told them that he put the sheath in his pants when he got out of the car to look for the knife on the ride to Troy's house.

The defendant's version of the incident differed substantially from Marrone's. He said he never picked up a knife during the ride to Troy's house. He was arguing with McCart in the car when McCart, without provocation, suddenly punched him in the back of the head. The defendant turned around, and McCart punched him in the nose causing him to bleed and rendering him unconscious. He regained consciousness in front of Troy's house where both Marrone and McCart were yelling at him. He became frightened and ran into the house. McCart grabbed him and started punching, and Marrone immediately began to punch him as well. All three fell to the floor in a struggle, and the defendant saw a knife in someone's hand. He was being choked, started to black out, and feared for his life when he grabbed the knife and started slashing randomly. He heard everyone yelling at him to get out, so he left and turned himself in to the police the next day.

On appeal, the defendant argues that he is entitled to a new trial because he was not permitted to introduce evidence of specific instances of McCart's violent conduct of which the defendant was aware. We agree. In *Commonwealth* v. *Fontes*, 396 Mass. 733, 735 (1986), we held that a defendant asserting self-defense in a homicide case "should be allowed to prove that at the time of the killing he knew of specific violent acts

recently committed by the victim." Such evidence is relevant on the issue whether the defendant acted justifiably in reasonable apprehension of bodily harm. *Id.* at 735-736. Prior to *Fontes*, a defendant who claimed self-defense was permitted to introduce evidence of the victim's reputation for violence at the time of the incident, *Commonwealth* v. *Edmonds*, 365 Mass. 496, 502 (1974), and of threats by the victim to him, *Commonwealth* v. *Rubin*, 318 Mass. 587, 589-590 (1945). *Fontes* is the first case in Massachusetts which holds that evidence of specific violent acts by the victim toward others of which the defendant was aware are admissible when a defendant claims self-defense.

During the defendant's testimony, his counsel requested a lobby conference regarding questions he was about to ask concerning the defendant's state of mind at the time of the killing. According to the defendant's counsel, the defendant would have testified that his state of mind was influenced by what he knew about violent acts committed by McCart. The defendant would have testified to a conversation he had with Marrone at the restaurant on the night of the killing. After the defendant and McCart had an argument, McCart went to the men's room and Marrone told the defendant, in the words of defendant's counsel, "that he ought not be arguing with this kid. He told him that McCart was a very tough young man and . . . that he had assaulted other people and that he was charged and had been over in the Framingham District Court on charges that he assaulted some person with a switch-blade knife and that he had assaulted some other person with a rock. Also, that he had even assaulted a police officer with some kind of weapon." [1]

The prosecutor objected to the introduction of this testimony and the judge ruled that it was inadmissible. The ruling was erroneous. For reasons stated in *Fontes, supra*, the defendant should have been allowed to introduce evidence of specific instances of McCart's recent violent conduct.

---

[1] Copies of certified records from the Framingham District Court contained in the record appendix indicate that McCart was charged with three counts of assault and battery by means of a dangerous weapon: one involving a switchblade knife; one involving a rock; and one involving the use of a shod foot.

The Commonwealth argues that *Fontes, supra,* should not apply because the defendant's trial took place before the *Fontes* decision. However, where an issue is properly preserved and pending on direct appeal, the defendant is entitled to the benefit of a new rule of law announced after his trial. *Commonwealth v. Bellamy,* 391 Mass. 511, 515 (1984). The Commonwealth further argues that we need not apply *Fontes* retroactively because the decision was not constitutionally compelled. Although we have held that, in some circumstances, rules which are not constitutionally required need not apply retroactively, *Commonwealth v. Parham,* 390 Mass. 833, 838 n.3 (1984), we think that *Fontes* should apply to those defendants who have preserved the issue at trial and raised it on direct appeal. *Bellamy, supra.*

The Commonwealth also argues that, even if *Fontes* applies, the judge's refusal to admit the proffered evidence is harmless error. We disagree. At the trial, the critical issue was whether the jury believed the testimony of Marrone or the defendant's version of self-defense. The excluded testimony would have enhanced the defendant's assertion of self-defense because the defendant's claim that he was in fear would have been more plausible. With this additional evidence to substantiate the defendant's explanation that he was in fear, the defendant could then have appeared to be more credible in the eyes of the jury. The exclusion of the evidence of McCart's prior violent conduct known to the defendant was prejudicial. Consequently, the defendant is entitled to a new trial.

We do not treat the other issues raised by the defendant concerning an evidentiary ruling and instructions to the jury because it is not likely that they will reappear in a new trial. The judgments are reversed, the verdicts set aside, and the cases are remanded to the Superior Court for a new trial.

*So ordered.*