COMMONWEALTH *vs.* ROBERT O. BERG.

No. 92-P-886

Worcester. March 11, 1994. - August 24, 1994.

Present: DREBEN, JACOBS, & GREENBERG, JJ.

*Practice, Criminal*, Voluntariness of statement, Findings by judge, Reasonable doubt. *Evidence*, Admissions and confessions. *Constitutional Law*, Admissions and confessions. *Controlled Substances*.

At a criminal trial the judge correctly concluded that the defendant's written incriminating statement to police, after having received Miranda warnings, that he was the owner of certain controlled substances was not rendered involuntary by the circumstance that the police had truthfully explained to the defendant that both he and his mother (who was in the defendant's apartment at the time the police executed a search warrant there) would be charged with narcotics offenses unless the ownership of the drugs was known. [203-206]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the judge's failure to articulate the standard "beyond a reasonable doubt" in his findings or jury instructions on the issue of the voluntariness of the defendant's confession, where the evidence against the defendant was strong and there were repeated references to the proper standard of proof in other parts of the instructions. [207]

Error, if any, in the judge's exclusion of certain hearsay evidence, proffered by a criminal defendant at trial, was harmless. [207-208]

INDICTMENTS found and returned in the Superior Court Department on April 5, 1990.

A pretrial motion to suppress evidence was heard by *William C. O'Neil, Jr.*, J., and the case was tried before *Andrew G. Meyer*, J.

*Andrew L. Mandell* for the defendant.

*Sandra L. Hautanen*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. Among items found by narcotics agents in executing a search warrant at the defendant's apartment were sixteen grams of marihuana, 57.5 grams of cocaine, $1,521,

a cuff list,[1] a scale, inositol (a cutting agent), costly and sophisticated counter-surveillance devices, martial arts weapons, and numerous guns and knives.[2] At the time of the search, the occupants of the apartment were the defendant and his mother.[3] As the items were found, they were "logged as evidence at the kitchen table, where Mrs. Berg sat." According to Thomas Greene, the officer overseeing the evidence, the defendant was told that "both he and his mother would be charged, and that a trial judge would make a determination as to whose cocaine it was."

Convicted of trafficking in cocaine, unlawful possession of cocaine with intent to distribute, unlawful possession of marihuana, and unlawful possession of a firearm (an assault rifle),[4] the defendant claims, relying on Commonwealth v. Hunt, 12 Mass. App. Ct. 841 (1981), that a written statement taken from him acknowledging that the drugs were his was not voluntary and should not have been submitted to the jury. He also argues that the judge erred in excluding evidence of a transfer of funds to him from his sister. We affirm the convictions.

During the trial, Officer Greene testified, without objection,[5] that after accusing the officers of planting the drugs

---

[1]A cuff list is a "tally sheet of drug transactions." Commonwealth v. Filippidakis, 29 Mass. App. Ct. 679, 680 (1991). It "usually contain[s] first names or nicknames and monetary amounts and [is] used to denote money owed to a narcotics dealer." Commonwealth v. Meehan, 33 Mass App. Ct. 262, 264 n.2 (1992).

[2]The defendant claimed that the guns and knives and other weapons were for purposes of playing "splat," a game that was described by one of the officers executing the warrant as "a game of adults playing Army and shooting each other."

[3]The apartment was the defendant's; the mother lived elsewhere. The police also had a search warrant for her residence.

[4]The defendant was found not guilty on another count of possession of marihuana, not guilty of unlawful possession of marihuana with intent to distribute, and not guilty of unlawful possession of ammunition. The charges of unlawful possession of cocaine with intent to distribute and unlawful possession of marihuana were placed on file without the defendant's objection.

[5]In requesting a voir dire, defense counsel attributed his lack of objection to the defendant's oral statement to his unawareness that the defendant had made such an oral admission.

the defendant admitted they were his. When it became apparent that Greene was about to discuss the defendant's written statement, defense counsel requested, and the judge conducted, a voir dire to determine whether the signed confession was voluntary. See *Commonwealth* v. *Blanchette*, 409 Mass. 99, 106 (1991).

It was not disputed that the defendant had orally been given Miranda warnings and had, after acknowledging that he understood them, signed a card containing the warnings. The remainder of the evidence at the voir dire was conflicting. The defendant, who was then thirty-one years old and had finished high school and had also attended trade school, testified that he was told that his mother would be arrested, charged, and strip-searched. He claimed that at one point, Greene had held his mother, who was crying, by the wrist, with a cuff in one hand, and had said, "Well, this is it, you know, this is your last chance, she's going."

Greene testified that, when the defendant denied, having previously admitted, that the cocaine was his, he (Greene) had told him that a large amount of cocaine had been seized, that he and his mother were the two persons present, that both would be charged, and that a trial judge would decide to whom the cocaine belonged. Greene denied that he ever threatened to strip-search Mrs. Berg or have her strip-searched but acknowledged that he thought Mrs. Berg "was upset by the incident that was taking place." Earlier in the trial, another officer had admitted that, in effect, Mrs. Berg had been told that she was going to be "charged with the cocaine" unless somebody said whose cocaine it was. Mrs. Berg was never charged or arrested.

At the end of the voir dire, the trial judge orally ruled as follows: "I'm going to take the view that as far as I can see, this was a voluntary statement. He may have had a motive to protect his mother, but I don't think that makes it involuntary. But at least you can argue the issue in final argument to the jury and it will be put to the jury . . . . I don't consider it in sense of duress."

"[A] defendant's statement is usually 'the key item in the proof of guilt, and certainly one of overpowering weight with the jury.' " *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). "Due process requires the Commonwealth to persuade the judge . . . that the statement was voluntary before it is admitted in evidence at trial," and Massachusetts's "humane practice" requires that the Commonwealth prove voluntariness beyond a reasonable doubt, first to the judge, and, if the judge finds the statement voluntary, the jury, too, must be persuaded beyond a reasonable doubt that the statement is voluntary. Otherwise it must be disregarded. *Id.* at 151-152.

The defendant challenges for the first time on appeal both the judge's failure to refer specifically to the standard of proof in reaching his conclusion that the statement would be permitted to be placed before the jury, and his failure to set forth the proper standard of proof in his jury instructions on voluntariness. Although the defendant filed written requests for jury instructions, he did not object to the judge's instructions on voluntariness. Accordingly, we shall review these points solely to determine whether in these circumstances there exists a substantial risk of a miscarriage of justice. *Commonwealth* v. *Brown*, 392 Mass. 632, 636 (1984).

1. The first and more crucial issue is whether, as the defendant claims, the uncontroverted evidence that his written statement was made only after he had been informed (or could infer) that, unless the police knew who owned the cocaine, his mother would be arrested and charged required a finding by the judge that the statement was involuntary.[6] While "[a] concern for one's family may be as significant in inducing an involuntary confession as a concern for oneself," *Commonwealth* v. *Hunt*, 12 Mass. App. Ct. at 844-845, "not

---

[6]The Commonwealth urges that the primary reason the defendant gave for confessing was that the police had threatened to "strip-search" his mother, and Greene had testified that no such threat had been made. Thus — the argument goes — the judge could have decided the case based on disbelief of the defendant's assertion. While the defendant did stress the strip-search, a fair reading of his testimony is that he was coerced by the threat of arrest and strip-search of his mother.

every promise or inducement renders a statement involuntary."[7] Smith, Criminal Practice and Procedure § 378 (2d ed. 1983 & Supp. 1994). *State* v. *Anderson*, 298 N.W.2d 63, 65 (Minn. 1980) ("courts do not mechanically hold confessions involuntary just because a promise has been involved"). Rather, to determine voluntariness, it is necessary to look at the totality of the circumstances, see *Commonwealth* v. *Tavares*, 385 Mass. at 146; *Commonwealth* v. *Hunt*, 12 Mass. App. Ct. at 844, "*including* any promises or threats made by police officers or the prosecution . . . ." *United States* v. *Jackson*, 918 F.2d 236, 242 (1st Cir. 1990) (emphasis in original).

Contrary to the defendant's contention, this case is unlike *Commonwealth* v. *Hunt*. There, the trial judge found that the defendant's wife was being held "with no evidence in the possession of police even approaching probable cause." 12 Mass. App. Ct. at 843. Here, at the time of the voir dire (including testimony at the trial prior to the voir dire hearing), there was evidence that the police had probable cause to arrest the defendant's mother who, when the search began, had been cooking in the kitchen where the drugs were found. When they informed the defendant that both he and his mother would be charged and a judge would determine to whom the drugs belonged, they used no false information, pretexts, or threats of illegitimate action. Of course, it is implicit in their statement that if the police obtained evidence that the defendant, and not his mother, was the owner of the drugs she would not be charged.

Many of the cases that, in similar circumstances, allow introduction of the confession gloss over the implicit promise. E.g., *State* v. *Ferguson*, 119 Ariz. 55, 60 (1978) ("such statements do not make a confession inadmissible where they are not threats or promises to induce a confession, but only

---

[7]As pointed out in *United States* v. *Jackson*, 918 F.2d 236, 241-242 (1st Cir. 1990), the case of *United States* v. *Bram*, 168 U.S. 532, 542-543 (1897) (a confession to be voluntary "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence"), although not overruled, "has been modified."

point out the obvious fact that if the guilty person is found it will be unnecessary to hold others"); *People* v. *Abbott*, 156 Cal. App. 2d 601, 605 (1958) ("the officers made it clear to defendant that [the defendant's girlfriend] would not be prosecuted if their investigation failed to disclose evidence of her guilt, but this was not a threat to prosecute her if defendant did not confess the crime nor a promise to release her if he did. The fact, alone, that the principal motive for a confession is that it will probably result in the exoneration of another person who is suspected of complicity in the offense does not render the confession involuntary"); *People* v. *Jackson*, 19 Cal. App. 3d 95, 100 (1971) (the officer, at most, made "a simple statement of fact . . . that defendant's wife would be released if further investigation convinced him and his superiors that she had no connection with the crime"); *People* v. *Buxton*, 28 Ill. App. 3d 429, 433 (1975) (remarks to the defendant concerning his wife's release were simply statements of his duty as a police investigator).

Other cases recognize that, even if a truthful statement by the police concerning a relative and such relative's release contains an implicit threat or promise, such statement, if unaccompanied by illegitimate police action, does not render a subsequent confession involuntary. *Allen* v. *McCotter*, 804 F.2d 1362 (5th Cir. 1986). *United States* v. *Jackson*, 918 F.2d at 242. See *United States* v. *Tafoya*, 459 F.2d 424, 427 (10th Cir. 1972) (for admission to be involuntary as matter of law, defendant must show he was subject to threats of illegitimate action). Contra *State* v. *Hilpipre*, 242 N.W.2d 306, 312 (Iowa 1976); *Hall* v. *State*, 255 Ind. 606, 611 (1971). See also *Johnson* v. *Trigg*, 28 F.3d 639 (7th Cir. 1994) (bona fide arrest inducing confession, unless used as a pretext to extract the confession, does not justify suppression).

Police have a duty to investigate. They may not, however, use false statements or other illegitimate means to induce an admission, and they must give Miranda warnings. Where, as here, they had reason to believe that both the defendant and

his mother were implicated, they were not precluded, on pain of finding any admission involuntary, from truthfully explaining that both persons would be charged unless the ownership of drugs were known. See *People* v. *Jackson*, 19 Cal. App. 3d at 100.

The basic question, of course, is whether the judge was correct in concluding that in light of the totality of the circumstances — " 'both the characteristics of the accused and the details of the interrogation' " — the defendant's statements were voluntary. *Commonwealth* v. *Tavares*, 385 Mass. at 146, quoting from *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 226 (1973). Accepting the trial judge's determination of credibility, see *Commonwealth* v. *Lanoue*, 392 Mass. 583, 588 (1984) ("In the absence of subsidiary findings, we assume that the judge's determination of credibility was adverse to the losing party"), and holding, as we do, that the implicit promise did not, in the absence of illegitimate police behavior, as matter of law vitiate the confession, we believe the judge was correct. The defendant, a high school graduate, was given Miranda warnings; he said he understood them. There is nothing to suggest that he was unusually susceptible to psychological coercion. That the defendant might have had a motive to protect his mother is not sufficient to find his confession involuntary.

We add a word of caution. Although we hold that the statements of the police, even if viewed as implicit promises, did not on this record require the judge to find the confession involuntary, we do not suggest that psychological pressure generated by concern for a loved one may not impair a defendant's ability to make a rational decision and thus make a confession involuntary. Police and prosecutors must, in all events, avoid improper tactics, including express bargaining with the defendant for a person's release or threats to arrest in the absence of sufficient cause. See *United States* v. *McShane*, 462 F.2d 5, 7 (9th Cir. 1972). Contrast *United States* v. *Carter*, 910 F.2d 1524, 1529 (7th Cir. 1990), cert. denied, 499 U.S. 978 (1991).

2. There was no substantial risk of a miscarriage of justice in the judge's failure to articulate the standard "beyond a reasonable doubt" with respect to the findings of voluntariness. As to his own findings, we cannot say that the omission was erroneous. As pointed out in *Commonwealth v. Brown*, 392 Mass. at 637, since a "failure to make findings alone would not constitute reversible error," see *Commonwealth v. Brady*, 380 Mass. 44, 52 (1980); *Commonwealth v. Paniaqua*, 413 Mass. 796, 797 n.2 (1992), "the absence of precise language concerning the standard of proof does not require reversal."[8] Although the judge did not explain the standard to be applied by the jury in considering whether the confession was voluntary, in view of the extensive evidence as to the circumstances of the defendant's confession and the repeated references to the proper standard of proof in other parts of the instructions, it is highly unlikely that either the judge's failure expressly to reiterate the correct standard or his use of "finding" language, see *Connolly v. Commonwealth*, 377 Mass. 527, 533 (1979), led to a different determination on the voluntariness of the confession. In any event, we are confident, because of the strong evidence against the defendant, including his oral admission which was properly before the jury, that there was here no substantial risk of a miscarriage of justice.

3. The defendant's claim that the judge erred in excluding the defendant's proffer of an innocent explanation for his financial resources is not borne out by the record. The form of the question called for hearsay, and the defendant neither made clear to the judge how the evidence could be properly presented, nor made an offer of proof as to the amount involved. Even if there was error, in view of the fact that the explanation, as it later appeared, involved less than one-sev-

---

[8]We consider the basis of the judge's finding to be clear from the record. Such clarity is required in the absence of findings. *Commonwealth v. Paniaqua*, 413 Mass. at 797 n.2.

enth of the defendant's assets, and in view of the persuasive evidence of guilt, the exclusion was harmless.

*Judgments affirmed.*