COMMONWEALTH *vs.* ALEXANDER MCDONALD. February 23, 1981. The defendant was charged with first degree murder, tried by a jury, and convicted of manslaughter. The record discloses no error. 1. The safety pin found at the scene of the homicide was properly admitted. A police

officer, observing the defendant that same evening at the police station, saw that the defendant's trousers were open to a point three quarters of the way down the fly, and that they were fastened from that point down by a safety pin. In the light of other evidence that the defendant had been at the scene of the homicide that night, it was not unreasonable to infer that his trousers had been fastened higher up by another safety pin and that he had lost that one at the scene. In conjunction with the other evidence the safety pin tended to make an inference that the defendant had been present at the scene "more probable than it would be without the evidence," *Commonwealth* v. *Vitello*, 376 Mass. 426, 440 (1978), and it tended also to support an inference of physical exertion. See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 94 (1973). 2. It was proper to admit the jackknife found on the defendant's person when he was arrested, despite the fact that there was no witness to its having been used in the homicide. *Commonwealth* v. *Bartolini*, 299 Mass. 503, 511-512 (1938); *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39 (1950); *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 229-230 (1967); *Commonwealth* v. *Florentino*, 381 Mass. 193, 196-197 (1980); *Commonwealth* v. *Foley*, 7 Mass. App. Ct. 608, 614 (1979). A pathologist testified that the victim's wounds were consistent with a hypothesis that they had been inflicted by a jackknife, and there was evidence that a matchbook cover found in a groove of the knife was stained with blood. 3. For the same reasons there was no error in the judge's refusal to strike from the evidence the boots the defendant had worn the evening of the crime and which he had changed prior to his arrest. The fact that many other boots might have been consistent with the infliction of the many kicking wounds the victim suffered went only to the weight of the evidence. 4. The defendant's motion for a required finding of not guilty was properly denied. There was evidence that at approximately 9:00 P.M. the defendant had arrived at a bar with the victim and one Doherty. While there the defendant made a telephone call to one McKenzie in the course of which he (the defendant) stated, "I am going to kill [the victim] tonight." The victim was seen to be missing from the bar; a barmaid noticed the defendant missing somewhat later. At a time which the jury could infer was approximately 9:30 P.M., a patron entering the bar (who was confused and inconsistent as to the time) saw the defendant on the sidewalk outside the bar on top of another man, throwing punches at his chest and neck. At some point the defendant returned to the bar alone. At approximately 10:00 P.M. police arrived and found the victim lying in the gutter outside the bar. He was pronounced dead on arrival at Boston City Hospital. The cause of death was "positional asphyxia," apparently the result of his having lain face down in the gutter. He had been rendered unconscious by multiple blows. There was also evidence of numerous lacerations and contusions on the victim's body. Together with the evidence described in points one through three above, the jury could

properly infer that it had been the defendant who administered the blows which caused the victim's death.

*Judgment affirmed.*

The case was submitted on briefs.

*Joseph J. Balliro* for the defendant.

*Newman Flanagan,* District Attorney, & *Jeremiah Sullivan,* Assistant District Attorney, for the Commonwealth.