## Commonwealth *vs.* William J. Fontes.

Bristol. November 6, 1985. — February 12, 1986.

Present: Hennessey, C.J., Wilkins, Abrams, Nolan, & Lynch, JJ.

*Homicide. Self-Defense. Evidence,* As to self-defense, State of mind. *Practice, Criminal,* Offer of proof.

This court concluded that, as matter of common law, a defendant in a homicide case may introduce evidence of recent, specific instances of the victim's violent conduct, known to the defendant at the time of the homicide, to support his assertion that he acted justifiably in reasonable apprehension of bodily harm. [735-737]

At the trial of a murder case, there was no reversible error in the exclusion of testimony, described in the defendant's generalized offer of proof as to the expected collective testimony of several witnesses, and offered to show that, in his confrontation with the victim, the defendant reasonably feared for his safety and, therefore, that he had acted in self-defense, where the record did not clearly show both the purpose and the theory under which the evidence was offered, and where the offered evidence was not shown to involve recent circumstances. [737-739]

Indictment found and returned in the Superior Court Department on April 8, 1982.

The case was tried before *Francis W. Keating,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert L. Sheketoff* for the defendant.

*Patricia O. Ellis,* Assistant District Attorney, for the Commonwealth.

Wilkins, J. By an unpublished order, the Appeals Court affirmed the defendant's conviction of the murder in the second degree of John N. Beauvais-Warr (victim) in Fairhaven in March, 1982. *Commonwealth* v. *Fontes,* 19 Mass. App. Ct. 1108 (1985). We granted the defendant's application for further appellate review. We did so principally to consider whether we should adopt a new rule that evidence of a victim's specific

acts of violence, known to the defendant and occuring not long before a killing, is admissible to prove one element of self-defense, that at the time of the killing the defendant reasonably believed "he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force." *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980). See *Commonwealth* v. *Albert,* 391 Mass. 853, 861 (1984). The Appeals Court concluded that this issue was not preserved for appellate review and did not address it. We conclude that, in the proper circumstances, evidence of a defendant's knowledge of specific instances of a victim's prior acts of violence is admissible. Even if the issue was preserved on appeal, however, exclusion of such evidence in this case was not reversible error. We therefore affirm the conviction.

The jury could have found the following facts. The defendant was living with the former wife of the victim, who had remarried. Animosity and disagreements arose between the two households, some of which concerned the custody and upbringing of the children of the victim and his former wife. In the days immediately before the killing, several altercations occurred between the defendant and the victim. On the day of the killing, the defendant, accompanied in a motor vehicle by the victim's former wife and her (and the victim's) children, followed for a short distance a truck driven by the victim. Turning off along a different route, the defendant maneuvered his vehicle so as to confront the truck and block it, face to face, on a street in Fairhaven. The victim had a tear gas pistol which his wife had recently given him for protection. The defendant had a shotgun. The defendant left his vehicle and approached the cab of the truck holding an iron bar. When the victim displayed his gun, the defendant felt threatened and returned to his vehicle for his shotgun. He went back to the truck, pointed the gun at the victim, fired it, and killed him. Several disinterested persons witnessed the shooting. The defendant dropped the gun and said he did not know it was loaded.

The defendant argues that the trial judge improperly excluded relevant evidence tending to show that, in his confrontation with the victim, the defendant reasonably feared for his safety

and, therefore, that he acted in self-defense. In this Commonwealth, where the evidence could raise a reasonable doubt as to whether the defendant acted in self-defense in killing the victim, evidence of the victim's character as "a powerful, dangerous, quarrelsome or violent person, if known to the defendant, may be admitted" as tending to show the defendant's reasonable apprehension for his safety. *Commonwealth* v. *Rubin,* 318 Mass. 587, 588 (1945). See *Commonwealth* v. *Dilone,* 385 Mass. 281, 285 (1982), and cases cited. A defendant may present evidence of the victim's reputation as a violent or quarrelsome person and of his knowledge of that reputation by his own testimony, by the testimony of others, or both. *Commonwealth* v. *Edmonds,* 365 Mass. 496, 502 (1974). Evidence of the victim's threats of violence against the defendant, even if unknown by a defendant asserting self-defense, is admissible as tending to show that the victim was attempting to carry out his threat and that the defendant was in danger. *Commonwealth* v. *Rubin, supra* at 588-589. It has been our rule, however, that evidence of the victim's specific acts of violence against others, even if known to the defendant at the time of the killing, is inadmissible to prove either the victim's general reputation for violence or the defendant's concern for his safety. See *Commonwealth* v. *Connolly,* 356 Mass. 617, 626, cert. denied, 400 U.S. 843 (1970); *Commonwealth* v. *Lacasse,* 1 Mass. App. Ct. 590, 595 (1973), *S.C.,* 365 Mass. 265 (1974). Cf. *Commonwealth* v. *Roberts,* 378 Mass. 116, 129 (1979) (specific instances of conduct inadmissible to prove either propensity or general reputation for violence).

The defendant makes a reasonable argument that, where evidence in a homicide case could raise a reasonable doubt that a defendant acted in defense of himself, the defendant should be allowed to prove that at the time of the killing he knew of specific violent acts recently committed by the victim. We join the weight of authority in this country in concluding, as a matter of common law principle, that a defendant in a homicide case may introduce evidence of recent, specific instances of the victim's violent conduct, known to the defendant at the time of the homicide, to support his assertion that he acted

justifiably in reasonable apprehension of bodily harm. See *Commonwealth* v. *Stewart,* 483 Pa. 176, 182 (1978); *State* v. *Tribble,* 428 A.2d 1079, 1083 (R.I. 1981).[1] The incidents must not be remote (a discretionary matter for the trial judge) and other competent evidence must raise the question whether the defendant may have acted justifiably in his own defense.[2]

The admission of evidence of specific acts of violence known to the defendant is not without its potential disadvantages. The trial could be extended unreasonably by consideration of collateral points. Negative information about the victim may divert the jury from focusing on their basic task by causing them either to consider the victim's character and worth or to draw the impermissible inference that the victim acted in conformity with his prior behavior. Indeed, the fact of the victim's former violent conduct may have no warranted bearing on the defendant's state of mind at the time of the homicide. See *Maggitt* v. *Wyrick,* 533 F.2d 383, 386 n.5 (8th Cir.), cert. denied, 429 U.S. 898 (1976); *People* v. *Miller* 39 N.Y.2d 543, 550-551 (1976); *State* v. *Tribble,* 428 A.2d 1079, 1084 (R.I. 1981); *McAllister* v. *State,* 74 Wis. 2d 246, 251 (1976). On the other hand, as all the opinions just cited recognize, the defendant's state of mind and the reasonableness of his apprehension for his safety can be significant and difficult issues for the jury. Knowledge that the victim recently had engaged in specific acts of violence is likely to have more of an effect on a defend-

---

[1] The trend in homicide cases has been toward admitting evidence of specific incidents of the victim's violence known to a defendant at the time of the killing. See *Maggitt* v. *Wyrick,* 533 F.2d 383, 386 n.5 (8th Cir.), cert. denied, 429 U.S. 898 (1976); *People* v. *Miller,* 39 N.Y.2d 543, 549 (1976); 2 J. Wigmore, Evidence § 248 (Chadbourn rev. 1979 & Supp. 1984). It should be recognized that we are not considering here the admission of evidence of general reputation or of specific incidents of violence to show that the victim was, or was likely to have been, the aggressor. If evidence of a general reputation for, or specific incidents of, violence is admitted, the trial judge would be well advised to point out to the jury the limited purpose for which the evidence has been admitted.

[2] The Commonwealth does not argue that the evidence did not raise the question of self-defense so as to make a charge on self-defense unnecessary and evidence on the defendant's state of mind concerning the victim irrelevant.

ant's state of mind than is knowledge of the victim's general reputation for violence. A jury assessing the reasonableness of the defendant's reaction to the events leading to the homicide should in fairness have that information. See *People* v. *Burress,* 183 Colo. 146, 152-153 (1973); *People* v. *Miller, supra* at 551-552; *State* v. *Tribble, supra* at 1086. Trial judges can control undue investigation of collateral matters, keeping in mind that the central issue is not what the victim actually did in specific instances, but rather what was in the defendant's mind when he confronted the victim. See *People* v. *Miller, supra* at 552-553; *State* v. *Tribble, supra* at 1085.

Although we accept the defendant's contention that, given a proper foundation, evidence of a victim's recent, specific acts of violence known to the defendant is normally admissible, the exclusion of any such evidence in this case was not reversible error. We summarize the defendant's testimony bearing on the victim's conduct that tended to substantiate the defendant's asserted concern for his own safety. On the Sunday evening before the homicide, he heard the victim's voice under the second-floor window of the house in which he lived, and he saw the victim and two men "staging" a fight. Later, after midnight, the defendant became frightened when he saw the victim coming toward his house with what he believed to be a baseball bat. On Tuesday the victim hit him with a rock.[3] On Wednesday, the day of the killing, the victim frightened the defendant again. The defendant testified that he became "scared" and "ran" when the victim, seated behind the steering wheel of the truck, pulled out what the defendant thought was a loaded gun and said, "You're a dead man today."[4] The defendant had put the shotgun in his car, he said, because he had heard that the victim had a gun and was violent and the defendant was afraid of him. The defendant further testified

---

[3] The defendant admitted that after he was hit, he pursued the victim to his place of employment and taunted him to come out and fight, but the victim would not.

[4] The defendant testified that he did not remember pulling the trigger, that he did not mean to fire the gun, and that he told people, right after the shooting, that he did not know the gun was loaded.

that he knew that the victim was not under medication but that he was supposed to be. Defense counsel did not inquire as to what the defendant had believed the consequences to be of the victim's failure to take medication.

Other witnesses testified concerning the victim's violent or threatening conduct. His widow testified that on the Sunday before his death the victim went to Fairhaven with a baseball bat because telephone calls from the defendant had angered him. The defendant called the police. The victim's widow also admitted that a day or two later the victim threw a rock at the defendant. A witness who saw the shooting testified that the victim had a pistol in his hand and said, "I'll shoot you."

Defense counsel described the excluded evidence in an offer of proof following a bench conference that he requested not be recorded. As far as we can tell, the offer of proof was made in limbo. It was not made as to any document offered in evidence or following the sustaining of an objection to a question put to a witness. The Appeals Court concluded that the defendant did not offer the evidence to prove the victim's specific acts of violence and that he made only a vague and generalized offer. On the other hand, defense counsel did argue, at least as to some portion of the excluded evidence, that it was for the jury to consider on the defendant's state of mind.

The defendant's offer of proof dealt with some material that had no apparent bearing on the defendant's state of mind. In the absence of evidence that the defendant had known its contents, a hospital record of the victim's admission to a Veterans' Administration hospital at some undisclosed date could have had no relevance. The balance of the offer of proof concerned testimony that would have been given by the victim's former wife and by others that the defendant knew that the victim had not been taking medication which, at some undisclosed time, had been prescribed to curb his violence. Unless the record clearly shows both the purpose and the theory under which evidence was offered, a generalized offer of proof as to the expected collective testimony of several witnesses is most unsatisfactory.

Assuming the point was preserved for our consideration, the offered evidence was not shown to involve recent circumstances. In any event, it was cumulative and was less significant than evidence that the victim had, according to his own widow, engaged in recent specific acts of violence against the defendant. There was no reversible error, if there was error at all, in the exclusion of the evidence.

We have reviewed the defendant's challenges to the judge's charge and conclude that, for the reasons given in the Appeals Court's order, there was no reversible error. As no new principle of law is involved, we elect not to discuss the other issues raised, except to note that special care must be given to instruct the jury that the Commonwealth has the burden of proving beyond a reasonable doubt the absence of circumstances justifying the use of deadly force in a defendant's own defense. *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980). Compare *Commonwealth* v. *Albert,* 391 Mass. 853, 858-859 (1984) (instruction made clear that Commonwealth must prove beyond a reasonable doubt that defendant did not act in self-defense) with *Connolly* v. *Commonwealth,* 377 Mass. 527, 533-536 (1979) (instruction strongly implied that defendant bore burden of proving elements of self-defense).

*Judgment of the Superior*
*Court affirmed.*