## COMMONWEALTH vs. WALTER ZITANO.

Suffolk.    September 15, 1986. — January 15, 1987.

Present: PERRETTA, KAPLAN, & FINE, JJ.

*Evidence,* As to self-defense, Reputation, Relevancy and materiality. *Homicide. Self-Defense. Practice, Criminal,* Argument by prosecutor, Instructions to jury, Required finding, Verdict. *Rules of Criminal Procedure.*

On an appeal from a murder conviction, there was no merit to the defendant's contention that the judge excluded from evidence testimony of the victim's violent behavior towards third persons of which the defendant had knowledge, where the record showed that the defendant at trial had made no offer to prove such specific incidents. [405-406]

At the trial of a murder indictment arising from a combat between the defendant and his father, there was no error in the admission of a large trash barrel, where it was relevant to show malice aforethought by the defendant and to refute his claim of self-defense inasmuch as the evidence showed that the defendant threw the barrel at his father after stabbing him. [406-407]

At the trial of a murder indictment arising from a combat between the defendant and his father, there was no error in the prosecutor's reference to blood on the knife held by the defendant during the fight, even though there was no scientific evidence that the stains on the knife were in fact blood, where there was evidence that the father was bleeding after he collided with the defendant holding the knife and the medical examiner described the father's fatal wound as a "penetrating one." [407-408]

Where there was no evidence at the trial of a murder indictment to support the elements of involuntary manslaughter, the judge did not err in refusing to instruct the jury on that offense. [408]

Although there was sufficient evidence at the trial of a murder indictment to support the jury's verdict of murder in the second degree, the judge, in the circumstances, did not abuse his discretion in reducing the verdict to manslaughter in accordance with his authority under Mass.R.Crim.P. 25(b) (2). [408-409]

INDICTMENT found and returned in the Superior Court Department on January 16, 1985.

The case was tried before *Robert A. Barton, J.*

*John G. Tardif* for the defendant.

*Kevin J. Ross,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. When the jury returned a verdict of guilty on an indictment charging the defendant with the murder of his father, the trial judge, upon motion of the defendant and under authority of Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), reduced that verdict from murder in the second degree to manslaughter. On cross appeals, the defendant alleges error in various rulings of the trial judge throughout the trial, and the Commonwealth claims an abuse of that discretion allowed a trial judge under rule 25(b)(2). We affirm.

1. *The Evidence.*

There was evidence (including the defendant's testimony) to show that the defendant had lived with his father "on and off for fifteen years" and, at the time here involved, for a continuous period of a "couple of years." The father's house was a narrow, brick, three-story row house with a kitchen and living room on the first floor, separated by a long hallway. The defendant's sister lived next door and shared a common backyard with the father.

On the evening of November 23, 1984, the father (a widower) went out to dinner with a woman he planned to marry. The defendant went to a social club, where he watched a football game on television, after which he went to a local bar. During the course of the evening, the defendant drank three to four beers before returning home with a friend he had met at the bar.

Upon arriving home and entering the house, the defendant could hear his father screaming and yelling on the telephone located in the kitchen. As the defendant and his friend started to go to the second floor, the father ordered him into the kitchen. There he loudly accused the defendant, in angry and obscene words, of ruining his relationship with the woman he wished to marry.

According to the defendant, his father had been drinking heavily. The father repeatedly swore at the defendant and de-

manded that he get out of his house. When the defendant tried to calm the father down, the father ran from the kitchen to the center hallway and opened a cabinet, all the while screaming that if the defendant would not leave, he would "throw" him out. From the hallway the father ran out the front door of the house and down the steps. He stood at the bottom of the steps screaming to the defendant to get out.

Coming to the top of the front steps, the defendant saw his father brandishing a Bowie hunting knife which he had apparently taken from the hallway cabinet. It was then about 12:45 A.M., and the defendant's sister, hearing the screaming and yelling, came over to the father's house and pleaded with the defendant to stop the argument and leave. The father started to climb up the steps, and the defendant ran into the house and to the telephone. He called the police, using the 911 emergency number. The defendant next took a kitchen knife and ran back to the front door. A neighbor had come to the house and tried to stop the fight, but the father and the defendant told him to leave.

Considering the heated circumstances, it is not surprising that the testimony of the witnesses concerning the chronology of events is not entirely consistent. The defendant kicked and swore at the father and threw a large trash barrel at him, hitting him in the chest. The father swore and lunged at the defendant. The two wrestled, each trying at various times either to stab or disarm the other.

Although both sustained stab wounds, the father's was fatal. The medical examiner testified that he noted that the father had liver and heart problems, including a previous heart attack, but that the cause of the father's death was a penetrating stab wound of the left leg.

2. *The Defendant's Appeal.*

a. *Evidence of the father's prior violence.* In his opening statement, defense counsel told the jury that, in showing them that the defendant had acted in self-defense, he would present four witnesses who would describe the father's reputation in the community. They would testify that for a twenty-five year time span, the father was known as a man who openly carried

weapons, knives and guns, and that "he was not a man to mess with."

Although three of the witnesses did appear, their testimony lacked the force predicted by defense counsel. The father was described as a loud and boisterous man who carried weapons and made threats. In general, however, one never knew whether to take these threats seriously, but "you didn't cross" the father.

Relying on *Commonwealth* v. *Fontes,* 396 Mass. 733, 735-736 (1986), decided some five months after the present trial, defense counsel claims that the trial judge improperly precluded him from eliciting from these witnesses testimony of specific incidents of the father's violent behavior toward third persons of which the defendant had knowledge. A reading of the transcript reveals, however, that the defense did not offer to prove such incidents.

When defense counsel asked each of the witnesses his personal opinion concerning the father's propensity for violence, the trial judge sustained the Commonwealth's objection. He then advised defense counsel that he could question the witnesses about the father's reputation in the community for violence and aggression.[1] There is not even a hint in the transcript (let alone a "vague and generalized offer" of proof of the type found insufficient in *Fontes,* 396 Mass. at 738) that defense counsel wished to inquire of the witnesses about those specific incidents now graphically described in his brief. Based upon defense counsel's opening statement and the questions he put to the witnesses, we see no error in the trial judge's ruling.

b. *Admissibility of the trash barrel.* Although there is no dispute that in the course of the combat, the defendant threw a large trash barrel at the father, the defendant claims that it was error to admit the trash barrel in evidence. He claims that not only was this evidence irrelevant and inflammatory but also

---

[1] The trial judge instructed the jury contemporaneously with the witnesses' testimony that: "[E]vidence of the character of the alleged victim in this case as a powerful, dangerous, quarrelsome or violent person, if known to the defendant, may be admitted as evidence of the defendant's apprehension for his own safety and the reasonableness of that apprehension as far as the issue of self-defense may be concerned." See *Commonwealth* v. *Fontes,* 396 Mass. at 736 n.1.

that no proper foundation for its admissibility had been established.

There was evidence to show that in the course of the combat and as the defendant had the better of the father, the defendant kicked him about the head, spat on him, and said, "I hope you die, you [obscenity]." There was also evidence that the defendant threw the trash barrel at the father after he had stabbed him.

The Commonwealth argues, correctly, that the trash barrel was relevant to show malice aforethought by the defendant and refute his claim of self-defense. See *Commonwealth* v. *Amazeen,* 375 Mass. 73, 81 (1978); *Commonwealth* v. *Huot,* 380 Mass. 403, 408 (1980); *Commonwealth* v. *Harvey,* 397 Mass. 803, 810 (1986). Any deficiencies in the foundation laid for the admission of the barrel would affect only the weight to be afforded that evidence. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 377 (1978); *Commonwealth* v. *McDonald,* 11 Mass. App. Ct. 944, 945 (1981). Further, whether the presentation of the barrel to the jury was more inflammatory than informative is a question to be decided by the trial judge, whose discretion will be upheld by an appellate court absent "palpable error." *Commonwealth* v. *Sawyer,* 389 Mass. 686, 700 (1983). Finally, in view of the testimony, including that of the defendant, concerning the barrel, any error in allowing it in evidence would be, at best, harmless.

c. *The prosecutor's closing argument.* As we understand the defendant's argument, the prosecutor engaged in "impermissible exaggeration" when he stated in reference to the knife held by the defendant in the fight: "Look at the stains on both sides of the blade and up on the handle of the blade. My-oh-my, could that be blood? . . . [The father's] blood." Because there was no scientific evidence that the stains on the knife were in fact blood, let alone the father's, the defendant argues that the prosecutor went too far.

Passing the question of the timeliness of defense counsel's objection to the remark,[2] we see no error. There was evidence

---

[2] Defense counsel did not make an objection at the time of the statement or at the completion of the argument, nor did he seek to make known his

to show that the defendant was holding the knife as he walked toward the father and collided with him. When the defendant stepped back, the father clutched his abdomen and fell to his knees, bleeding. The medical examiner described the father's fatal wound as a "penetrating one." We see no impropriety in the prosecutor's statement. See *Commonwealth* v. *Palmariello,* 392 Mass. 126, 132 (1984), citing *Commonwealth* v. *Nordstrom,* 364 Mass. 310, 315 (1973).

d. *The jury instructions.* We see no error in the trial judge's refusal to instruct the jury on involuntary manslaughter. For the elements of that offense, see *Commonwealth* v. *Campbell,* 352 Mass. 387, 397 (1967). On the hypotheses constructed by defense counsel for the first time on appeal, that, in the commission of his aggressive acts against the defendant, the father either stabbed himself or suffered a fatal heart attack, the defendant would be entitled to a verdict of not guilty rather than an instruction on involuntary manslaughter. To the extent that the defendant contends either theory entitled him to an instruction on accident, we find no support for that contention in the evidence, see *Commonwealth* v. *Walden,* 380 Mass. 724, 726-727 (1980), or the law. See *Commonwealth* v. *Palmariello,* 392 Mass. at 144-145, and cases therein cited.

3. *The Commonwealth's Appeal.*

"On review of a judge's determination under rule 25(b)(2) to reduce a verdict to guilty of a lesser offense, 'we consider only whether the judge abused his discretion or committed an error of law.'" *Commonwealth* v. *Keough,* 385 Mass. 314, 319 (1982), quoting from *Commonwealth* v. *Gaulden,* 383 Mass. 543, 557 (1981). In ordering the entry of a verdict of manslaughter, the trial judge gave the following reasons for his decision: "the location of the victim's wound"; the undisputed fact that the victim also had a knife and the defendant

dissatisfaction to the trial judge at any time during the recess called after closing arguments; rather, he waited until the trial judge returned to the bench and began his charge to the jury before seeking a side bar conference and noting his objection.

threw his own knife down at one point, perhaps in an attempt to reduce the level of the fight"; the defendant called for police assistance, using the emergency 911 number; and the relationship of the parties, coupled with the facts of the defendant's age and that he was still living with his father. The judge also noted that, "in the six years since the authority to reduce verdicts was given to trial judges, this trial judge has never reduced a verdict in a homicide case."

Although there is no question that the evidence was sufficient to warrant the jury's verdict as matter of law, see *Commonwealth* v. *Keough,* 385 Mass. at 319, we see no abuse of discretion in the trial judge's decision (not lightly made, as seen from his remarks) that in the interests of substantial justice, the jury's verdict should be reduced.

*Judgment affirmed.*