COMMONWEALTH vs. NELLY RODRIQUEZ.[1]

Suffolk. January 5, 1994. - May 26, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Homicide. Self-Defense. Evidence*, Self-defense, State of mind, Expert opinion. *Witness*, Expert. *Battered Woman Syndrome.*

At the trial of an indictment for manslaughter, evidence proffered by the defendant of specific violent acts directed at the defendant by the victim in the months before the victim's death was improperly excluded by the judge as too remote; where the testimony would have aided the jury in determining the reasonableness of the defendant's use of deadly force and would have significantly enhanced the defendant's assertion of self-defense, its exclusion required a new trial be granted. [5-7]

This court noted that, in a criminal case, where a claim of self-defense is in issue, and there is evidence of a pattern of abuse of the defendant by the victim, expert testimony on common patterns in abusive relationships and the typical emotional and behavioral responses of persons who are battered may be admissible, and noted that certain changes in the

---

[1]As is our custom, we spell the defendant's name as it appears on the indictment.

admissibility of such evidence were effected by the passage of G. L. c. 233, § 23E, inserted by St. 1993, c. 477, § 1. [7]

INDICTMENT found and returned in the Superior Court Department on December 27, 1989.

The case was tried before *James D. McDaniel, Jr., J.*

The Supreme Judicial Court granted a request for direct appellate review.

*M. Page Kelley*, Committee for Public Counsel Services (*Regina Zupan*, Committee for Public Counsel Services, with her) for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant fatally stabbed her boy friend during an argument. She was indicted on a charge of manslaughter. G. L. c. 265, § 13 (1992 ed.). At trial, she claimed self-defense. A jury found her guilty. She was sentenced to from sixteen to twenty years in prison. She appealed and we granted her application for direct appellate review. In this appeal, she raises three issues which, she asserts, require reversal: (1) that the judge erred in excluding certain evidence that the defendant had suffered a long history of physical abuse by the victim; (2) that the judge erred in excluding expert testimony regarding the battered woman syndrome; and (3) that the judge erred in instructing the jury that the defendant had a duty to retreat from the victim, since he was lawfully in her home. We shall address in detail only the first claim of error, as we agree with the defendant that reversal is warranted on that ground.

We summarize the evidence. For most of the night on March 26, 1989, the defendant was at home, in her apartment, with her four children[2] and Michelle Shuman, a teenager who occasionally lived with the defendant. At approximately 9 P.M., the victim, Julio Montalban, who was living with the defendant, left to go to work. Some friends, one of

---

[2]The victim was the father of the youngest of the children.

whom was the defendant's niece, Maria Marquez, came to the apartment to socialize for approximately two hours. The victim returned shortly before midnight. He asked Rodriquez to cook dinner for him, which she did.

Some time after midnight, a friend and neighbor of the defendant, Maria Perez, came to the apartment. Perez was upset and wanted to talk to the defendant. After the defendant and Perez had talked for a while, the defendant began to put on her coat and shoes, planning to go to Perez's house. The victim told the defendant that "she wasn't going anywhere." The defendant countered that she was.

After the defendant had been at Perez's house for about five minutes, the victim arrived. He and the defendant argued. The defendant testified that the victim called her a "whore," slapped her in the face, and pulled her hair. She also testified that the victim told her that they were "going to solve some problems" when they got back to her apartment.

When they were back at the defendant's apartment, the quarrel continued; the defendant and the victim yelled at each other, and pushed one another. At one point, the victim pushed the defendant into the kitchen, grabbed a knife from a drawer, and held the knife close to the defendant's face. The defendant's eleven year old son, Angel, threw a soda bottle at the victim. The defendant then pushed the victim into the dining room. The victim placed the knife on the dining room table.

The scuffle continued; as the defendant pushed the victim, a chain that he wore around his neck broke and fell to the floor. While reaching for the chain, he kicked Angel in the stomach. The defendant claimed that at this point, her neighbor, Anthony Way, came into the apartment and asked the victim to leave, which he did for a short time.

The victim soon returned, and resumed hitting the defendant. The defendant testified that, when she told her daughter to telephone the police, the victim threw the telephone and other household objects at her. The defendant then picked up the knife and told the victim to get out of the apartment. She opened the door, and told him to leave. The victim slammed

the door shut and told her that he would not go. The defendant opened the door again and again, the victim slammed it shut. He slapped the defendant's face. The defendant then stabbed and fatally wounded the victim.

*Evidence of prior abuse.* At various points in the trial, the defendant attempted to introduce evidence of prior beatings by the victim, which the judge excluded.[3] Most of the details of this abuse were disclosed through the voir dire testimony of Dr. Prudence Baxter, the defendant's expert on the battered woman syndrome.[4] We shall not give a detailed account of the abusive relationship between the parties. Suffice it to say that the defendant and other defense witnesses would have testified that, among other things, during their

---

[3] The evidence that the jury were allowed to hear regarding incidents of violence was limited to the following: The defendant's neighbor, Anthony Way, was allowed to testify that he saw the victim strike the defendant one week before his death, and that, on the night of the stabbing, he saw the victim bending the defendant over a chair. There was testimony from Maria Marquez, Maria Perez, and the defendant that, on the night of the stabbing, when the defendant and victim were at Perez's house, the victim pushed the defendant and pulled her hair, and that the victim slapped the defendant's face when they returned home.

[4] The judge excluded Dr. Baxter's testimony for reasons related to the battered woman syndrome. He did not expressly reject any of it on the ground that the acts described were too remote in time to be admitted under *Commonwealth* v. *Fontes*, 396 Mass. 733, 735-736 (1986), and its progeny.

Although Dr. Baxter's information had come directly from conversations with the defendant, and although the defendant testified at trial, the defendant's trial counsel did not attempt to question the defendant herself about these incidents. The defendant claims that this failure to make a formal offer of proof simply reflected the judge's earlier exclusion of testimony relating to incidents of violence against the defendant, and that further objection would have been futile. See *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 11-12 n. 4 (1980). Although we are not entirely persuaded by this argument, we need not concern ourselves with the point, because defense counsel did offer testimony through other witnesses, which the judge would not allow. For example, when Maria Marquez attempted to testify to incidents of the victim's physical abuse of the defendant, the judge limited her to incidents the precise date of which she could remember. When defense counsel asked if he could inquire whether Marquez had seen any incidents in the six months prior to the victim's death, the judge replied, "Absolutely not."

relationship, the victim verbally abused the defendant; hit and punched her on many occasions; tried to strangle her with an extension cord; raped her; punched her in the abdomen while she was pregnant with their son, in an attempt to induce an abortion; threw bleach in her face; and held a baseball bat to her head and threatened to kill her with it. The victim lived continuously at the defendant's apartment, except for a period of about three months, in late 1988 and early 1989. On December 2, 1988, the defendant had applied for a restraining order against the victim. A temporary order was in effect for five days, but the defendant failed to return to court for a hearing to extend it.[5]

We believe that the judge took an overly restrictive view of this evidence. It is well established that a defendant asserting self-defense is allowed to introduce evidence showing "that at the time of the killing [she] knew of specific violent acts recently committed by the victim." *Commonwealth* v. *Fontes*, 396 Mass. 733, 735 (1986). *Commonwealth* v. *Pidge*, 400 Mass. 350, 352-353 (1987). Such evidence is admissible to assist the jury in "assessing the reasonableness of the defendant's reaction to the events leading to the homicide," *Fontes*, *supra* at 737, and determining "whether the defendant acted justifiably in reasonable apprehension of bodily harm." *Pidge*, *supra* at 353. Both *Fontes* and *Pidge* dealt with the admissibility of violent acts of victims toward others. We held that such acts, known to the defendant, would, if not too remote, be admissible as evidence "tending to show the defendant's reasonable apprehension for his safety." *Fontes*, *supra* at 735. Here, the claimed acts of violence were di-

---

[5]The judge excluded all evidence recited above, as well as evidence of the restraining order. He stated that the order was "of no importance in this case," was "too remote in time," and was not admissible unless the defense could show that the victim knew about it. This was error. Counsel for the defendant had sought to admit the order to show that the defendant "felt that she was . . . threatened and she went and sought help through the court." Thus, it was irrelevant whether the victim knew about the order. We discuss the question of remoteness in the text.

rected at the defendant herself and, thus, were even more relevant.[6]

The Commonwealth is correct in noting that a trial judge has discretion to determine when an act is too remote to be admissible for this purpose. See *Fontes, supra* at 736. Evidence is too remote when the point for which it is sought to be admitted — the reasonableness of the defendant's fear of harm — is not plausibly and appreciably advanced by it. There can be no bright line: in one circumstance, an act two weeks earlier might be too remote, while in another, an act two years before may not. That is why the matter is left to the sound discretion of the judge. However, we are convinced that in this case, the judge abused that discretion.

We disagree with the Commonwealth that the testimony that the judge allowed (a couple of slaps, one incident of hair pulling, and a punch, mostly occurring on the night of the stabbing and all within a two-week period) gave the jury a "full depiction of the violent relations between the victim and the defendant." We believe that the jury would have been aided considerably in determining the reasonableness of the defendant's use of deadly force if they had heard evidence of other violent acts recently committed by the victim against the defendant. We think this is so partly because much of the excluded evidence concerned acts of violence that were considerably more serious than those heard by the jury, and that those acts were committed against the defendant herself. Cf. *Commonwealth* v. *Doherty*, 23 Mass. App. Ct. 633, 637 (1987).

The critical issue at trial was whether the defendant acted in self-defense. The excluded testimony would have enhanced

---

[6]As we have stated in *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980), the elements of self-defense are that a defendant "(1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case."

the defendant's assertion of that defense so significantly that its exclusion constitutes reversible error. A new trial is required. See *Pidge, supra* at 354.

*Expert testimony concerning the battered woman syndrome.* The defendant raises as reversible error the judge's refusal to allow the testimony of Dr. Baxter regarding the battered woman syndrome. In the view we take of this case, we need not expound at length on our views on this issue.[7] We note only that, where the claim of self-defense is in issue, and there is evidence of a pattern of abuse of the defendant by the victim, expert testimony on common patterns in abusive relationships and the typical emotional and behavioral responses of persons who are battered may be admissible. See *Commonwealth* v. *Lazarovich*, 410 Mass. 466, 474 n.8 (1991). Cf. *Commonwealth* v. *Mamay*, 407 Mass. 412, 421-422 (1990); *Commonwealth* v. *Dockham*, 405 Mass. 618, 627-630 (1989); but see *Commonwealth* v. *Reed*, 417 Mass. 558, 561 (1994) (expert may not opine on a witness's credibility). See also *Commonwealth* v. *Fontes*, 396 Mass. 733, 737 (1986).

We do not consider the other issue raised by the defendant concerning an instruction to the jury because it is not likely that it will recur at a new trial. The judgment is reversed, the verdict set aside, and the case remanded to the Superior Court for a new trial.

*So ordered.*

---

[7]In the time since the defendant's trial, the Legislature has dramatically altered the landscape, with the passage of G. L. c. 233, § 23E, inserted by St. 1993, c. 477, § 1. We shall not speculate about any issues that may arise under the statute, including the issue whether it applies to crimes occurring before April 14, 1994, its effective date.

This statute applies to criminal trials involving allegations that a defendant used force against another where the issue of self-defense, defense of another, duress, coercion, or accident is raised by the defense. The statute makes admissible: (1) evidence that the defendant suffered abuse or harm; (2) expert testimony concerning the pattern of abusive relationships and the effects of such relationships, and whether the defendant displayed characteristics common to victims of abuse.