COMMONWEALTH *vs*. HEATH RICHARDSON.

Worcester. February 2, 1999. - March 5, 1999.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, & IRELAND, JJ.

*Practice, Criminal,* Instructions to jury, Capital case, Argument by prosecutor. *Evidence,* Failure to produce witness, Absence of witness, Inference, Hearsay, Verbal completeness. *Homicide. Jury and Jurors.*

At a murder trial, the judge correctly declined to give a missing witness instruction on the Commonwealth's failure to call a certain named witness, where there was no basis on which to conclude that the testimony of the witness would have been anything but cumulative. [183-185]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's instructions defining murder in the first degree and murder in the second degree, and clarifying the differences. [185-186]

No reason appeared on the record of a trial on an indictment for murder in the first degree for this court to reduce the verdict or to grant a new trial on the basis of alleged evidentiary errors or errors in the judge's instructions. [186-188]

INDICTMENT found and returned in the Superior Court Department on June 15, 1994.

The case was tried before *Elizabeth Butler*, J.

*Roger A. Cox* for the defendant.

*Anne S. Manzello*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. A jury convicted the defendant, Heath Richardson, of murder in the first degree on the theory of deliberate premeditation. The defendant appeals, arguing that the judge erred in denying his request for a missing witness instruction and by instructing the jurors that they had to consider murder in the second degree before considering murder in the first degree. We affirm the conviction. We decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

The jury could have found the facts to be as follows. The victim, Jamal Graham, was at a barbecue at a friend's house. The defendant, who had never been to the house before, entered

through the back door, drawing his gun as he walked inside the home. The defendant entered the living room, with his gun drawn, went to the bottom of the stairs, and fired his gun at the victim, who was seated on the stairs. The victim also had a gun, and several shots were exchanged, one of which fatally wounded the victim. The defendant then ran out the front door. Eugene Thomas, a relative of the victim's friend, grabbed the defendant. Two witnesses heard Thomas say, "You shot that boy," or "You killed that boy," to which the defendant responded, "He shouldn't be . . . with me."

The shoot-out was the culmination of earlier hostilities between the defendant and the victim. The evidence showed that, earlier on the day of the killing, the defendant had attempted to rob the victim. The victim retaliated by searching out the defendant, putting a gun to his head, forcing him to his knees, and making him say he was a "nigger" and a "bitch." When the victim let the defendant up, the defendant said, "You should have killed me." The defendant asserted self-defense, claiming that he was ambushed by the people at the barbecue and that he shot the victim out of fear for his own life.

1. *Missing witness instruction.* The defendant requested a missing witness instruction due to the Commonwealth's failure to call Eugene Thomas as a witness. The judge denied the request, and defense counsel objected. There was no error.

"Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that person, had he been called, would have given testimony unfavorable to the party . . . . Because the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence — it should be invited only in clear cases, and with caution." *Commonwealth* v. *Figueroa*, 413 Mass. 193, 199 (1992), quoting *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). We have said that whether an inference can be drawn from the failure to call a witness depends on the posture of the particular case and the state of the evidence. See *Commonwealth* v. *Anderson*, 411 Mass. 279,

282 (1991); *Commonwealth* v. *O'Rourke*, 311 Mass. 213, 222 (1942). The trial judge is vested with the discretion to refuse to give the instruction, and the defendant is not entitled to the instruction as a matter of right. *Anderson, supra.*

The defendant argues that a missing witness instruction should have been given because there was some disagreement between two witnesses who heard the conversation between the defendant and Thomas as to where the conversation took place. The defendant argues that Thomas's testimony would have been "critical" to the Commonwealth's case because the statement the witnesses claimed the defendant made to Thomas tended to negate the defendant's self-defense theory. The defendant concludes that the Commonwealth's failure to present the testimony of such a crucial witness warrants the inference that the witness's testimony instead would have been favorable to the defendant. We disagree. The defendant has not demonstrated that Thomas's testimony would have been anything but cumulative.[1] *Commonwealth* v. *Keniston*, 423 Mass. 304, 314 (1996).

The first witness who heard the conversation testified that, after the defendant ran out of the house, he ran around to the back door, where Thomas said, "You shot that boy." The second witness stated that Thomas, as he grabbed the defendant, said, "You killed that boy," and that the conversation took place at the front door. Although the witnesses disagreed as to where the encounter took place, they agreed on the content of the statements they heard. "This is not a case in which the jury heard nothing from a witness the Commonwealth would have been expected to call." *Commonwealth* v. *Crawford*, 417 Mass. 358, 367 (1994). Having presented the testimony of the two witnesses, the Commonwealth was not required to call another witness to testify to the same facts. *Anderson, supra* at 285.

Moreover, the testimony regarding Thomas's conversation with the defendant was not "of distinct importance to the case." *Figueroa, supra.* The Commonwealth presented other evidence that negated the theory of self-defense. Witnesses testified that it was the defendant who initiated the shooting, that there had been two prior confrontations that day, and that the defendant

---

[1] We observe that the testimony also would have tended to be corroborative of other evidence. *Commonwealth* v. *Keniston*, 423 Mass. 304, 314 (1996). Thomas's comment that the defendant shot the victim was not disputed. The defendant's comment generally demonstrated his feelings toward the victim because of the earlier incident with the victim.

sought out the location of the barbecue at the home of friends of the victim. Nothing in the record suggests that the Commonwealth attempted to withhold or conceal significant evidence by not calling Thomas as a witness. *Commonwealth* v. *Lo*, 428 Mass. 45, 51 (1998). The inference that the requested instruction would have suggested to the jury was unwarranted.[2] Contrast *Commonwealth* v. *Thomas, ante* 146, 151-153 (1999). The judge properly refused to give the instruction.

2. *Jury instructions.* The defendant complains that the judge invited confusion and error by instructing the jurors to consider whether the defendant was guilty of murder in the second degree before deciding whether he was guilty of murder in the first degree.[3] The defendant did not object at trial so we examine the instructions for a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. "We look to the charge as a whole to determine whether it fairly instructs the jury." *Commonwealth* v. *Raymond*, 424 Mass. 382, 386 (1997), citing *Commonwealth* v. *Blanchette*, 409 Mass. 99, 105 (1991). We consider what a "reasonable juror could have interpreted the instruction" to mean. *Id.*, quoting *Commonwealth* v. *Nieves*, 394 Mass. 355, 360 (1985).

The judge began the instructions by defining murder. The judge then thoroughly explained murder in the first degree, the challenged portion of the charge falling at the end of this explanation. After concluding the instructions on murder in the first degree, the judge instructed on murder in the second degree, charging that, "[i]f the Commonwealth has proved to you beyond a reasonable doubt that the defendant unlawfully killed Jamal Graham without justification or excuse, and that there was no self-defense, and that the killing was committed with malice aforethought, then you must convict of murder in the

---

[2]The Commonwealth additionally asserts that the instruction was not required because Thomas was available as a witness for the defense. We decline to adopt this reasoning. Although Thomas physically was available, it is doubtful that he would have been willing to cooperate with the defendant, given that he is the uncle of a long-time friend of the victim.

[3]The portion of the charge the defendant urges is incorrect states: "If the Commonwealth has proved to you beyond a reasonable doubt that the defendant committed an unlawful killing with malice aforethought, then you must find the defendant guilty of at least murder in the second degree, and you must consider whether the Commonwealth has proved to you that the murder was done with deliberate premeditation such that your verdict should be murder in the first degree."

second-degree, if the Commonwealth has failed to prove that there was deliberate premeditation." The judge closed the instructions by telling the jurors that their "verdict will be either not guilty, guilty of murder in the first-degree, or guilty of the lesser included offense of murder in the second-degree, or guilty of manslaughter . . . ."

The judge conformed with the practice suggested in *Commonwealth* v. *Sama*, 411 Mass. 293 (1991). The challenged portion merely clarified the difference between murder in the first and second degrees. We read the charge as instructing the jury first to determine whether there was malice aforethought. If the jurors were so to conclude, the judge instructed them then to consider whether the killing rose to the level of murder in the first degree. If not, the jurors were instructed to consider the charge of murder in the second degree. The instructions should have specifically used the words malice aforethought rather than murder in the second degree. However, a fair reading of the charge warrants the conclusion that reasonable jurors would have understood the order in which to consider the issues. There is no substantial likelihood of a miscarriage of justice.

3. *General Laws c. 278, § 33E.* The record in this case reveals no reason to disturb the verdict using our extraordinary power under G. L. c. 278, § 33E. Our review includes the arguments raised by prior appellate counsel. We comment on those arguments briefly.

Prior appellate counsel argued that there were several evidentiary errors. He complained that hearsay statements regarding the attempted robbery of the victim by the defendant should have been excluded. We disagree. The judge properly admitted the statements under the doctrine of completeness. *Commonwealth* v. *Watson*, 377 Mass. 814, 826, 830 (1979). The statements were admitted along with statements concerning the victim's retaliatory measures following the robbery attempt. All were offered through one witness, to whom the victim spoke about the robbery, and, one hour later, about the retaliation. We also see no reason to disturb the judge's weighing of the probative value of these statements against their prejudicial effect. Nor was the defendant's right to confrontation violated through the admission of the statements.

Prior counsel further argued that the judge erred by excluding evidence that the victim was a drug dealer. There is no merit to this claim. The judge permitted defense counsel to inquire

whether the witness knew of the victim selling drugs within two months prior to the murder. *Commonwealth* v. *Fontes*, 396 Mass. 733, 735-736 (1986) (well established that a defendant asserting self-defense is allowed to introduce evidence showing "that at the time of the killing [he] knew of specific violent acts recently committed by the victim"). See *Commonwealth* v. *Rodriquez*, 418 Mass. 1, 4-5 (1994). There were no questions as to the victim's general reputation in the community.

Prior counsel asserted that the defendant should have been granted a mistrial, complaining first of the low representation of African-Americans in the jury venire. The defendant had the burden of establishing (1) African-Americans are a distinctive group in the community; (2) African-Americans were not fairly and reasonably represented in the venire in relation to their proportion in the community; and (3) the underrepresentation was due to systematic exclusion of the group in the jury selection process. *Commonwealth* v. *Colon*, 408 Mass. 419, 437 (1990). There is no evidence in the record to satisfy any of these factors.

Prior counsel also claimed grounds for a mistrial in the showing of the jurors on the television news. The judge properly inquired of the jurors whether the incident would affect their ability to serve. All the jurors said no. There was no error.

Prior counsel claimed that the judge erred in failing to instruct the jury on the effect of intoxication on the ability to deliberately premeditate. However, there was no evidence that the defendant was under the influence of drugs at the time of the shooting.[4]

Finally, prior counsel complained that the prosecutor's closing statement suggested impermissible burden shifting. The prosecutor argued in his closing that the jury did not have to decide whether earlier that day the defendant attempted to rob the victim or whether the victim put a gun to the head of the defendant. Prior counsel contended that the prosecutor implied that the government did not have the burden of proving that the

---

[4]Prior counsel also argued that the charge misstated the third prong of malice because the instruction included the reference to grievous bodily harm. A proper instruction would not have included the reference to grievous bodily harm. However, the error was harmless because the third prong of malice has application only when a charge of murder in the first degree is based on the theory of extreme atrocity or cruelty. *Commonwealth* v. *Morgan*, 422 Mass. 373, 382 (1996). Here, the Commonwealth's theory and the defendant's conviction were based on deliberately premeditated malice aforethought.

defendant did not act in self-defense.[5] We disagree. Read in context, the prosecutor's aim was to stress the jury's obligation to decide what transpired at the barbecue. Moreover, any error was alleviated by the judge's lengthy instructions on the issue of self-defense. The judge specifically stated that the defendant would not be guilty of murder if "the Commonwealth fail[ed] to prove to you beyond a reasonable doubt that the defendant did not act in self-defense." No reasonable juror could have misinterpreted or misunderstood the judge's instructions.

*Judgment affirmed.*

---

[5]Since our decision in *Commonwealth* v. *Kappler*, 416 Mass. 574, 586 n.11 (1993), the Commonwealth has not asked us to reconsider whether the burden should be on the defendant to prove that he acted in self-defense.