Following a jury trial in the District Court, the defendant was convicted of assault and battery on a correction officer.[2] See G. L. c. 127, § 38B(b ). The central issue in the case was whether the defendant acted in self-defense. On appeal, the defendant contends that the judge erred in denying his request to instruct the jury that they could consider evidence of alleged threats or specific acts of violence committed by the victim against him on the issue whether he was reasonably afraid for his safety. See Instruction 9.260 and Supplemental Instruction 7 of the Criminal Model Jury Instructions for Use in the District Court (2009), and note 3, infra. The defendant also claims that the judge improperly limited the jury's consideration of this evidence to issues of the witnesses' bias and motive to testify. We affirm.
Background. 1. Facts. The jury could have found the following facts. At the time of the altercation upon which the conviction is based, the defendant was civilly committed to the Massachusetts Treatment Center, at which the victim, Manuel Baptiste, was employed as a correction officer. At approximately 7:20 A.M. on December 24, 2013, Baptiste saw the defendant out of his cell and ordered him to return. The defendant refused. Baptiste approached the defendant, who was retrieving two cups of coffee from a microwave. The defendant then threw a cup of hot coffee at Baptiste, burning his arm. As the defendant began to throw the second cup, Baptiste took hold of the defendant's elbow. The defendant punched Baptiste in the face, and a fight ensued. Baptiste managed to wrestle the defendant to the ground, but he could not restrain him. During the struggle, the defendant clawed and scratched at Baptiste's eyes, and Baptiste bit the defendant's finger. The fight continued until other officers intervened and pulled the men apart. Baptiste suffered a number of injuries, including a cut lip, a hole in his retina, a scratched cornea, and torn cartilage in his knee.
The defendant testified at trial and related a different version of events. He claimed that he was helping his elderly roommate out of the cell when he stopped to get water for coffee. As he was returning to his cell, Baptiste "impetuously" swatted the cup of water out of his hand. Baptiste then took the defendant by the elbow and moved him out of the view of the cameras, where he slammed the defendant's head against a window and pulled him to the ground. At this point, with Baptiste on top of him, the defendant was fearful of being suffocated and he fought back.
The defendant also testified about his prior history with Baptiste. On direct examination, he claimed that he had several "prior run-ins" with Baptiste. As the defendant described it, Baptiste would "shadow" him as he walked to and from his cell and did "things" to his personal property in order to "shame or humiliate" him. The defendant could not specify when any of these incidents took place, but stated that they were part of a "continuum." The defendant testified that none of the prior encounters with Baptiste involved physical violence. However, on cross-examination, the defendant stated that Baptiste "hit my hand a few times and knocked food out of it as he br[ought] food to the cell." He also testified that Baptiste bit him on the finger. The defendant stated that this only happened once, and he could not recall when.
2. Jury instructions. Defense counsel requested an instruction on self-defense. The Commonwealth did not object, but requested that the judge also give supplemental instructions on reasonable apprehension, excessive force, and the defendant as first aggressor. See Supplemental Instructions 1, 3, and 6 of Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009).[3] Defense counsel's objection to the supplemental instructions regarding excessive force and the defendant as first aggressor was overruled. Trial counsel then asked the judge to "consider giving [supplemental] instruction number seven about the victim's prior threats and violence towards the Defendant."[4] The judge denied the request. Relying on the Supreme Judicial Court's decision in Commonwealth v. Adjutant, 443 Mass. 649, 665-666 (2005), the judge stated: "That has to be pleaded. I heard nothing about it. I'm not going to do that. Your objection's noted to that as well." After some further discussion, the judge stated: "I will say something about it in terms of bias and motive, but I'm not going to do anything about prior acts under Adjutant and the cases that follow." There was no objection.
The judge proceeded in his final charge to instruct the jury on self-defense, reasonable apprehension, excessive force, and the defendant as first aggressor. Before giving the model instruction on self-defense, the judge told the jury that "[i]t is for [them] to decide whether or not there is any evidence of self-defense in the case," and that, if they decide that such evidence is present, "the Commonwealth must prove beyond a reasonable doubt that the Defendant did not act in self-defense." The judge noted that it was for the jury to decide whether there was a first aggressor and who it was, and he also instructed the jury with respect to the credibility of witnesses. Specifically, the judge informed the jury that they "may ... consider whether or not [the witness] displays any bias in testifying and whether he or she has any interest in the outcome of the case." Referring to the defendant's testimony about prior incidents with Baptiste, the judge stated:
"And speaking of that, I did allow evidence in from one of the witnesses [the defendant], about previous incidents that he suggests occurred between him and Officer Baptiste, Correctional Officer Baptiste. I do not allow you to consider whether those are true or not, but you may consider that evidence if you want to on the issue of whether or not someone has a bias or a motive to testify in a particular way. And that could be any one of the witnesses in the case."
There were no objections to the judge's instructions.
Discussion. 1. Victim's prior threats or acts of violence. The primary thrust of the defendant's argument is that the judge misinterpreted Adjutant and the notice requirements imposed by that case when he denied the defendant's request for an instruction on Baptiste's prior threats and violence against him. We agree with the defendant that the judge's reliance on Adjutant was misplaced.
Before Adjutant was decided, juries were permitted to consider evidence of a victim's prior acts of violence or reputation for violence, provided that the defendant knew about such acts or reputation at the time of the altercation. See Commonwealth v. Fontes, 396 Mass. 733, 735 (1986). In Adjutant, supra at 665-666, the Supreme Judicial Court "announced a new rule granting trial judges the discretion in self-defense cases to admit prior bad act evidence of victims -- even if unknown to the defendant -- for purposes of illuminating the identity of the first aggressor." Commonwealth v. Pring-Wilson, 448 Mass. 718, 736 (2007). "A defendant who intends to introduce evidence of the victim's specific acts of violence to support a claim that the victim was the first aggressor must provide notice to the court and the Commonwealth of such intent and of the specific evidence he intends to offer." Adjutant, supra at 665. See Mass.R.Crim.P. 14(b)(4), as amended by 463 Mass. 1504 (2012). Here, Baptiste's alleged prior acts of violence were known to the defendant. Consequently, the new rule announced in Adjutant is not applicable, and the defendant was not required to provide pretrial notice as a prerequisite to receiving the instruction at issue.
Despite the improper rationale for the judge's ruling, the question remains whether there was a basis for instructing the jury as the defendant requested and, if so, whether the judge's decision not to give the instruction constitutes prejudicial error warranting a new trial. See Commonwealth v. Rosario, 460 Mass. 181, 187 (2011) ("requested jury instructions that are denied by the trial judge are preserved on appeal"). We conclude that the defendant was not entitled to the requested instruction because, as defense counsel conceded at oral argument, there was no evidence that Baptiste previously had threatened the defendant with violence. Contrast Commonwealth v. Edmonds, 365 Mass. 496, 499 (1974). While the defendant did testify to instances of Baptiste's violent conduct, he could not identify a "specific" instance where Baptiste allegedly knocked food out of his hand and his testimony did not support an inference that the incidents to which he testified were "recent." Commonwealth v. Fontes, supra at 735-736.[5]
Even if we were to conclude otherwise, the defendant's challenge to his conviction fails because the alleged error was nonprejudicial. See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (quotation omitted) ("An error is nonprejudicial only if ... the conviction is sure that the error did not influence the jury, or had but very slight effect"). Evidence of Baptiste's prior conduct toward the defendant was not offered or relied upon to demonstrate that the defendant had a reasonable fear for his safety on the day of the altercation. See Commonwealth v. Fontes, supra at 737 (evidence of prior violent acts by the victim admissible when relevant to "what was in the defendant's mind when he confronted the victim"). Instead, the defendant testified that, in light of his "prior run-ins" with Baptiste, getting "the hell out of [Baptiste's] way" was what was in his mind on that day. This point was driven home during closing arguments, when defense counsel urged the jury to credit the defendant's version of events based on his testimony regarding his prior history with Baptiste. Where, as here, the critical issue for the jury was to determine which version of the altercation was credible, and where they were properly instructed on self-defense and how to assess the credibility of witnesses, the failure to give the requested instruction had, at best, "very slight effect" on the jury.[6] Commonwealth v. Flebotte, supra.
2. Remaining claims. Next, the defendant argues that the judge erred by limiting the jury's consideration of his prior history with Baptiste to "the issue of whether or not someone has a bias or a motive to testify in a particular way."[7] Because there was no objection to this instruction, we review to determine if there was an error and, if so, whether the error created a substantial risk of a miscarriage of justice. See Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).
We agree with the defendant that the challenged instruction was flawed. However, the error did not create a substantial risk of a miscarriage of justice in the context of the evidence in the case and the instructions as a whole because, as previously noted, the central issue in the case was whether the defendant acted in self-defense. To resolve that issue, the jury necessarily had to determine who was telling the truth, Baptiste or the defendant. The judge allowed the jury to consider the evidence of prior incidents to resolve this question. In such circumstances, we discern no risk of a miscarriage of justice.
The defendant's final argument is that the judge erroneously omitted the first sentence of the model instruction on self-defense from his final charge and this omission resulted in an impermissible shift of the burden of proof. See Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009) ("A person is allowed to act in self-defense"). This argument does not require extended discussion. While the judge omitted the sentence in question, he correctly instructed the jury on the Commonwealth's burden to prove that the defendant did not act in self-defense beyond a reasonable doubt.
Judgment affirmed.

The defendant was found not guilty of assault and battery by means of a dangerous weapon (hot coffee).

"1. Reasonable apprehension":
"A person cannot lawfully act in self-defense unless he (she) is attacked or is immediately about to be attacked. The Commonwealth may prove that the defendant did not act in self-defense by proving beyond a reasonable doubt that there was no overt act -- either words, a gesture, or some other action -- that gave rise to a reasonable belief of attack or immediate danger."
"3. Excessive force":
"A person cannot lawfully act in self-defense if one uses more force than necessary in the circumstances to defend oneself. How much force is necessary may vary with the situation. Exactness is not always possible. You may consider whether the defendant had to decide how to respond quickly under pressure. The Commonwealth may prove the defendant did not act in self-defense by proving beyond a reasonable doubt that the defendant used clearly excessive and unreasonable force. You may also consider any evidence about the relative size or strength of the persons involved, where the incident took place, (and what kind of weapons, if any, were used), among other things."
"6. Defendant as original aggressor":
"Generally, the original aggressor has no right of self-defense unless he (she) withdraws from the conflict in good faith and announces his (her) intention of abandoning the fight."

The proposed instruction tracked verbatim the District Court's model jury instruction on a victim's prior threats and violence against the defendant. See Supplemental Instruction 7 of Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court (2009). It states:
"In considering who was being attacked by whom, you may take into account any threats of violence made by (the alleged victim) against the defendant and whether, as the defendant contends, (the alleged victim) was trying to carry out such threats during this incident. If the defendant was aware, at the time of the incident, that such threats had been made, you may also consider them in determining whether the defendant was reasonably afraid for his (her) own safety. You may also consider any specific, recent acts of violence that were committed by (the alleged victim) against the defendant and that were known to the defendant, on the issue of whether the defendant was reasonably afraid for his (her) own safety."

The defendant could not identify a specific date or time frame over the "continuum" of his commitment when Baptiste allegedly knocked food out of his hand or bit his finger. Even if the judge had applied the correct analysis, he would not have abused his discretion in concluding that this evidence was not recent enough to justify giving the defendant's requested instruction.

In light of the judge's specific instruction that it was for the jury to decide whether there was a first aggressor and who it was, we are not persuaded by the defendant's assertion that the judge's failure to give the requested instruction deprived him of the right to present a meaningful defense.

To the extent that the defendant claims that the judge's limiting instruction violated Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979) ("[t]he judge shall inform counsel of his proposed action upon requests prior to their arguments to the jury"), we note that the judge specifically stated during the charge conference that he would limit the jury's consideration of evidence regarding the defendant's prior history with Baptiste to the issues of bias and motive.